## HETTYE C. NEWBURGER v. JOSEPH NEWBURGER.

Western Section. January 10, 1930.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

Holmes, Canale, Loch & Glankler, of Memphis, for appellee.

Canada, Williams & Russell, of Memphis, for appellant.

OWEN, J. The question involved on this appeal is who is entitled to the care and custody of two little girls, Joy Newburger about thirteen years of age and Mary Newburger, about eight and one-half years of age. These are the only children born as the result of the marriage of Hettye C. Newburger to Joseph Newburger.

Joseph Newburger died the 17th day of December, 1926. The complainant, formerly his wife, filed her bill for divorce against Joseph Newburger in the Chancery Court of Shelby County on the 22nd day of July, 1922, charging cruel and inhuman treatment, four days thereafter the defendant filed his answer, practically admitting the material allegations of her bill. Five days after the answer was filed a final decree for a divorce was entered and in that decree for divorce it was agreed that the defendant should be given immediate custody of said two children, then aged six and three and one-half years respectively and should have the custody of the same continuously for a period of ten months, whereupon the mother, the complainant, if she so desired, should have their custody for a period of two months, the intention being for the children to spend the months of June and July with their mother and the balance of the time with their father. They were to visit their mother once a week. A property settlement was made as to alimony, the defendant agreeing to pay the complainant the sum of $300,000 in payments of $50,000 each, extending over a period of time. A few months after the rendition of this divorce and decree for alimony, the complainant married Dr. W. T. Arrington of Memphis, Tennessee. Shortly after her marriage with Dr. W. T. Arington, the decree for alimony and custody of the children, by consent, was amended as follows:

"(1) The exclusive care, custody, control and support of said two children are hereby given to and vested in the said Joseph Newburger for and during his life, and with the right after his death to appoint a guardian not only of the estate, but of the person of said children, to have control and custody of their care, maintenance, education, rearing and support, subject only to the following specific conditions:

"(2) During the life of said Joseph Newburger the complainant, now Hettye C. Arrington, is to have the right within the jurisdiction of the Chancery Court of Shelby County, Tennessee, to see, be with and have the companionship of the said children, between the hours of nine o'clock A. M. and six o'clock, P. M. on any day or days, she may select, at reasonable times and intervals:

"(3) The said Joseph Newburger shall select some suitable person to have control of the care, custody, maintenance, education and rearing of said children after his death, by last will and testament or other lawful and suitable provision, and he here now agrees to nominate and appoint his sister, Mrs. Alma Cohn as such guardian and custodian of the persons of the said children, and he undertakes solely in the same way to make suitable provision for their maintenance, care, education and support, to the extent that they may be fully and amply provided for in all these respects, during his life and after his death;

"(4) After the death of the said Joseph Newburger, the said complainant shall likewise have the privilege at suitable and reasonable times, places and intervals to see and have the companionship of said two children at times of her selection; and in the event she and the said guardian of the person disagree as to the exercise of said right and privilege on the part of said complainant, the reasonableness and propriety of such right to see and be with and enjoy the companionship of said children shall be submitted to the executors of the will of said Joseph Newburger and the trustees of his estate, whose opinion and decision thereon shall be final, so long as Julian C. Wilson (who is understood to be one of said executors and trustees), shall be exercising the functions of one of said trustees and constitute one of their number. In the event the said Julian C. Wilson is not exercising the functions and duties of said trustee and executor, nor shall not constitute one of their number, then the complainant shall have the right to apply to this court for determination of her right to exercise said privilege of seeing, being with and having the companionship of said children, either or both of them, and all questions with reference thereto.''

Within a few weeks after said decree was amended to-wit, on March 6, 1923, the defendant intermarried with Miss Rose Cohn. The two children, after the death of their father, continued to live with his second wife, Mrs. Rose Cohn Newburger, It appears that after complainant married Dr. Arrington, she lived with her second husband for few months in Chicago, Illinois, they moved from there to Havana, Cuba. After about two or three years of married life, the complainant and Dr. Arrington separated, she moved back to Memphis, Tennessee, leaving Dr. Arrington in Cuba.

It appears that the complainant and Joseph Newburger were married in the year of 1907, she was twenty-two years of age at the time of said marriage and he was forty-seven years of age. For many years the complainant and defendant lived on East Parkway in the City of Memphis, adjoining the home occupied by Judge Julian

C. Wilson, a prominent member of the Shelby county bar, the personal attorney of Mr. Newburger, and in his last will and testament Mr. Newburger named Judge Julian C. Wilson one of his executors and trustees. Judge Wilson acted as executor and trustee for some months after his qualification but resigned before the petition, now being considered, was filed. The amended decree provided that the court should retain jurisdiction of this cause only with reference to the custody of said children for the purposes expressed in the decree.

On the 8th day of May, 1928, the petition of Mrs. Arrington was filed in this case seeking the care or custody of her two children. She alleged that she had begged for the companionship and association of her children, all to no avail except at rare intervals she was permitted to be with them only in the daytime. In her petition she said:

"The entire matter of the custody and control of her said daughters, and their happiness and welfare rests in the sound discretion of this Honorable Court, and that this court now has full power and jurisdiction to hear and determine the matter of the custody and control of her said daughters, and to make such orders and decree with reference thereto as may be to the very best interest of said daughters, etc."

She also alleged in her petition that the court retained jurisdiction of the cause for the very purposes set forth in her petition. Among other things she alleged in her petition the infrequent intervals which had been afforded for her children to visit her, and she showed with exactness the unreasonable and unwarranted attitude of the guardian of said children with reference to such visitations. She was never permitted to visit the children, and they were permitted to spend only one night with her prior to the filing of the petition and a few days and nights with her during the Christmas holidays after the petition was filed.

In her said petition she prayed that the court would make full inquiry into the matters and things set forth in her petition, and would make such orders and decrees as may be to the very best interest of said children. She prayed the court to make full investigation into the welfare and condition of her children, and inquire into her present fitness to be with said children and to have them with her, and any and all other questions touching their welfare, happiness and custody, all to the end that the court might be able to ascertain what was and is really to the best interest of the children.

She asked the court to have the children brought into court and requested the court to examine them and question them; all to the end that their best interest might be subserved. The defendants to

the petition were Mr. R. L. Taylor, one of the executors, Sylvan and Samuel Newburger, two brothers of Joseph Newburger, one living in New Orleans and the other in New York City, Mrs. Alma Cohn, the guardian of the children. These defendants all answered denying the material allegations of the petition and relying upon the last will and testament of Joseph Newburger which they alleged that they were executing and carrying out the testator's wish and desires that the complainant should not have the care of these two children and it was further alleged that the complainant was not a fit and proper person to have the care, custody and control of said two children. With the issues thus joined the cause was submitted to Chancellor Ketchum who heard numerous witnesses pro and con, the chief issue being as to petitioner's fitness or unfitness to have the care of the two children and what was to the best interest of the children. The Chancellor decreed in favor of the petitioner, the children's mother. The defendants moved for a new trial which was overruled. They prayed and perfected an appeal and have assigned fifty-six errors. These errors will be grouped and they raise the following propositions:

The first error is that the court erred in refusing the defendants a trial by jury, they had called for a jury in their answer.

By the second group which embraces assignments two to seven inclusive and assignments thirteen and fourteen and from nineteen to twenty-five inclusive and thirty-one and thirty-two, it is insisted that the defendants were not permitted to go into the character of the complainant, prior to the time she obtained her divorce relating to her conduct with Dr. Arrington whom she afterward married, the court holding that such evidence or testimony was too remote and that defendants would be limited as to the petitioner's character for two or three years prior to the filing of the petition.

Group three insists that the Chancellor erred in decreeing in favor of complainant; that the evidence preponderates against the decree and this group includes assignments nine, ten, fifty-five and fifty-six.

Group four insists that the court erred in examining the two little girls, the children involved, and this insistence is covered by assignments eight, twenty-seven and fifty-three.

Group five insists that certain testimony was incompetent, being relative to the petitioners fitness as expressed in the testimony of Mrs. Leob, Mrs. Hayley, Judge Julian C. Wilson, Mr. Bertram Cohn and other witnesses along the same line of testimony, this evidence is covered by assignments twenty-eight, twenty-nine, thirty, thirty-four, thirty-five, thirty-six, thirty-seven and thirty-eight.

Group six is relative to the testimony of R. L. Taylor, one of the executors, this embraces assignment fifty-one.

All other assignments will be made and disposed of under group No. seven.

A very large record is presented in this cause, it was ably argued at the bar by rearned counsel representing both parties. The cause has been splendidly briefed and the court has been rendered great assistance by both parties through their counsel.

As to the first assignment, we are of the opinion that the defendants were not entitled to a jury, this is not an original suit, it is the reopening of a suit in which there had been a final decree and all rights of the parties had been settled with the reservation that at a future date, if certain changes and conditions arose, the petitioner would have the right to reopen the question as to the custody of her children, by applying to the chancery court that rendered the final decree. If Joseph Newburger had been living at the time the petition was filed, seeking the care, custody and control of the two children, he would not have had the right to a jury to try the issue as no jury was called for in the original suit. The defendants now before the court stand in the room and stead of Joseph Newburger, the chancery court having retained the divorce suit in court for the purpose of making further orders in regard to the care and custody of the two children involved.

Counsel for appellants rely upon the case of World Granite Co. v. Morris Brothers, 142 Tenn. 665. Morris Brothers were sued upon an account, they denied owing the account and demanded a jury in their answer. They were denied a trial by jury. On appeal our Supreme Court, speaking through Mr. Justice McKinney, said:

> "The statute in question is mandatory, and provides that where a jury is demanded in the pleadings, the cause shall be tried before a jury."

We are of the opinion that a jury must be demanded in the original pleadings or applied for by motion within the proper time. The present proceedings are but one step incidental to the entire litigation; a party is not entitled to a jury to try issues arising after a decree has been entered finally disposing of the main questions raised by the original pleadings.

The appellants had no constitutional or other right to a trial by jury. The Chancellor could not be compelled to delegate his sound discretion to another. He needed no advice from a jury. If he had had such advice, it would not have been binding on him in the slightest sense. The right of trial by jury is not guaranteed in any cause of which the chancery court has inherent jurisdiction, exercised according to the forms by which such courts are accustomed to administer remedies. Exum v. Griffis Newbern Company, et al., 144 Tenn. (17 Thomp.) 239; Miller v. Washington County, 143 Tenn., 488.

We quote briefly from Exum v. Griffis Newberg Co., supra, at the bottom of page 247 of the report:

"This has been so frequently stated by our courts as to become almost axiomatic. This proposition being sound, it follows that the constitutional provision does not guarantee the right of trail by a jury in any cause of which the chancery court has jurisdiction, which is exercised according to the forms by which such courts are accustomed to administer remedies."

Since time immemorial the chancery court has had jurisdiction of the property and person of minors. It had this right long before our present constitution.

In the case of Miller v. Washington County, supra, it was sought to reach a trust fund in the hands of road commissioners. It was a case of which the chancery court did not acquire jurisdiction by virtue of the Act of 1877, but was a suit of which said court had inherent equitable jurisdiction. The court, therefore, said at page 502 of the report:

"We think, therefore, that the granting of a trial by jury was a matter within the discretion of the Chancellor." Pitman v. Byars, 51 Texas Civil Appeals Rep., 83.

This case involved the custody of a minor, Texas has a constitutional guarantee of trial by jury. At page 87 of the report the court said:

"The constitutional requirement that the right of trial by jury shall remain inviolate, does not confer the right where it did not exist before the adoption of the constitution."

In the last case at page 88 of the report, the court quotes from Church on Habeas Corpus (2 Ed.), Sec. 172, as follows:

"A very important question is whether the issues in habeas corpus proceeding are to be tried by a judge or jury. The trial of questions of fact by the court seems to be the controlling principle in both England and the United States."

We quote from 46 Corpus Juris, p. 1254, as follows:

"Right to Jury Trial. In contest between parents over the custody of children, neither party is entitled to a jury trial as a matter of right, etc."

The court exercises its sound discretion in such cases, touching the custody of its wards. We quote from State v. Paine, supra, page 532, as follows:

"If the child be incapable of forming a judgment, the court will, in the exercise of their discretion, make an election for it."

There was no special finding of facts by the Chancellor, however, the decree recites the facts fully and we quote in part from the decree in the instant case as follows:

"And it appearing to the court that this cause has been heretofore retained in court with reference to the matters and things herein adjudged, and in reference to the custody and control of the said minor, Joy Newburger and Mary Newburger;

"And it appearing to the court that the late Joseph Newburger departed this life on December 17, 1926, and that Julian C. Wilson, who formerly qualified as executor and trustee under the will of the late Joseph Newburger, has resigned as such and is not now acting as executor and trustee under said will, and that the mother of said minors and the testamentary guardian and said trustees are not able to agree in reference to the matter set out in said petition and answers; and that said minors, Joy and Mary Newburger, are now living, and have been for several months, in an apartment in the City of Memphis, with the widow of the late Joseph Newburger, to-wit: Mrs. Rose C. Newburger, and that the said Joy Newburger will be thirteen years of age on the 21st day of June, 1929, and the said Mary Newburger was ten years of age on the 15th day of March, 1929, and that the said Mrs. Cohn, testamentary guardian of said minors under the will of the late Joseph Newburger, lives near Forrest Hill, in Shelby county, Tennessee, some twelve or fifteen miles from the place of abode of said minor children, and that the said Hettye C. Arrington is now living at 1305 Peabody avenue, in the said City of Memphis, and that her home and home surroundings and the neighborhood in which she lives are all suitable and proper as a place of abode for said minors, and that the said Hettye C. Arrington is a suitable and proper person to have the companionship of and association with said minors, and as the mother of said children she is a suitable and proper person to have their custody and rearing at this time; and that, in the exercise of the sound discretion reposed in this court by law and by the terms of the supplemental decree heretofore entered in this cause and the agreement which is made a part of said supplemental decree, the court is of the opinion that the highest and best interest of said minors will be subserved if they are with and have the companionship of, rearing by, and association with their said mother, all in the interest of their happiness and welfare, and the court being of the opinion that it is best for said minors to be with their said mother.

"It is, now therefore, accordingly ordered, adjudged, and decreed that the care, custody, and control of the said Joy Newburger and Mary Newburger be, and the same are hereby, awarded unto the said Hettye C. Arrington, until the further orders of this court; and that said children and their custody shall be and continue to remain with their mother, the said Hettye C. Arrington.

"It is further ordered, adjudged, and decreed that the family of the late Joseph Newburger, at reasonable times, places, and intervals, shall be permitted to receive visitations from and have associations with said minors, all in such way as not to interfere with the schooling of said minors; and if said parties are not able to agree with the said Hettye C. Arrington upon the times, places, and occasions of such visitations, then any such party in interest may make application to this court for an order for such visitations and associations as may be then meet and proper in the interest and happiness and welfare of said children.

"It is further ordered, adjudged, and decreed that the said minors shall not be taken out of the jurisdiction of this court without further orders and consent of this court.

"It is further ordered, adjudged, and decreed that the court retain jurisdiction of this cause for any and all purposes affecting the custody, care, control and best interest of said minors."

It appears from reading and studying the large record before us that as to the question, who is the proper party to have the care, custody and control of the two little girls involved and what is the best interest of these children, the evidence is conflicting. The issue is between the petitioner, the natural mother, and Mrs. Rose Newburger, the second wife of Joseph Newburger, and the party with whom the children were living.

It appears that at the time of the death of Joseph Newburger his associates in business estimated Newburger's wealth at from two to three million dollars. It appears that this estimate has been greatly reduced, what caused the loss in Newburger's estate, if there was a loss, or whether his wealth was too highly overestimated does not definitely appear. Mrs. Rose Newburger testified that during her married life Mr. Newburger gave her an allowance of $2000 per month, after his death the executors allowed her $1000 per month. It appears that the two children were charged each with one-third of this allowance. In about one year after the death of Mr. Newburger the home on Parkway was sold and Mrs. Rose Newburger and the children moved to a more modest home on Snowden circle in Memphis, and Mrs. Rose Newburger's allowance was reduced to $500 per month. She testified that she was charging the children each $75 per month which included their board and laundry.

Mr. R. L. Taylor, one of the executors, testified that the government had a claim against the Newburger estate for $200,000, for back taxes. If the estate was not successful in defending this claim, the Newburger estate would be very seriously reduced in value.

It appears that Mrs. Rose Newburger entertained extensively, both before and after her husband's death. Most of the witnesses,

who have testified that it was to the best interest of the children that they be left in the care and custody of Mrs. Rose Newburger, appear to be close friends of Mrs. Rose Newburger, who visit her frequently and who have been entertained in her home. Other witnesses who testified against petitioner's interest, were the close business associates of Joseph Newburger during his business career and the near relatives of Joseph Newburger, these witnesses frankly admit in most instances that they want the wishes of Joseph Newburger, as shown by his will, strictly carried out. These witnesses, while of excellent character, demonstrate friendship and bias and 'in some instances some of the witnesses show that they are prejudiced against the petitioner, Mrs. Arrington. For and on behalf of the petitioner a number of witnesses, who are her neighbors and who are citizens of excellent character, testified that the petitioner is a fit and proper person to have said children and that it is to the best interest of the children for them to be left with their natural mother. Most of the defendant's witnesses admit there is great love and devotion on the part of the natural mother for her children and the children for their natural mother.

As to the second group of assignments, in regard to the court limiting the cross-examination of the petitioner as to her character and conduct for a period of about three years prior to the filing of her petition in the instant case, counsel relies upon the case of Fry v. State, 96 Tenn., 467, in support of his assignments as to the limitation of his examination to petitioner's character. It is counsel's insistence that he should have been permitted, either by cross-examination of petitioner or by other witnesses to show that the petitioner was unfaithful to her husband prior to the filing of her divorce and obtaining a decree for divorce in 1922. We infer that after this divorce was obtained and a settlement for alimony was agreed upon, that Joseph Newburger, through affidavits from his servants, charged that his wife had been unfaithful, we do not know whether such charges lead to a material reduction of alimony agreed upon or not, but we infer that it did. There is proof that during the summer of 1926, the petitioner and Joseph Newburger had a conference and to a certain extent a reconciliation resulted whereby as to the future they would be good friends. We are of the opinion that the Chancellor, in the instant case, properly limited the inquiry as to petitioner's character back to the death of Joseph Newburger or to the time of the conference he and his first wife had. The inquiry was, whether or not the petitioner was a suitable and fit person to have the children now at the present time. In the Fry case, the Supreme Court said that the defendant, who had been convicted of arson on circumstantial evidence, should have had the benefit of

proving a good character prior to the time he moved into Warren county, Tennessee, where he had resided for six years coming from the State of Wisconsin. The court holding, in the Fry case, that the trial court had abused his discretion.

We are of the opinion, in the instant case, that the discretion of the Chancellor was not abused in limiting inquiry as to the character of the petitioner to a period of three years prior to the filing of her petition. The purported affidavits or statements of the colored servants in the home of the Newburgers, reflecting upon the character of the petitioner, were incompetent for several reasons. They were ex parte and the statements offered were unsigned and unsworn to.

In the Am. & Eng. Enc. L., Vol. 29, page 802, it is said, viz.: "It is also true that the material object of inquiry is the character of the witness at the time when he testifies; but if some latitude were not allowed in this regard, it would, in many cases, be impossible to impeach the most corrupt witness, or to sustain the most truthful one. The principle that the existence of a state of things once established by proof is presumed to continue the same until the contrary is shown, is applicable, within reasonable limits, to the character of a witness proved to have once sustained a bad reputation for truth and veracity. It is, therefore, competent to impeach a witness by proof of his reputation in a neighborhood where he formerly resided, if the evidence be not too remote in point of time." Stratton v. State, 45 Ind., 468; Walker v. State, 6 Blackf. (Ind.), 1; Rogers v. Lewis, 19 Ind., 405; Aurora v. Cobb, 21 Ind., 492; Willard v. Goodenough, 30 Vt., 393; Fisher v. Conway, 21 Kansas, 25 (S. C., 30 Am. Rep., 419). The same principle is of course applicable where the evidence is in support of the good character of the defendant.

In Teese v. Huntington, 23 Howard (U. S.), 2, the court said, viz.: "Such testimony undoubtedly may properly be excluded by the court, when it applies to a period of time so remote from the transaction involved in the controversy as thereby to become entirely unsatisfactory and immaterial, and, as the law cannot fix that period of limitation, it must necessarily be left to the discretion of the court."

It results that the assignments covered in group No. 2 are overruled.

We will next dispose of assignments covered by group No. 4.

We think it was fit and proper for the Chancellor to examine the two little girls in the presence of attorneys for each side and in the presence of the court reporters. The Chancellor wanted to get at the truth of the matter. The answers given to the Chancellor and also the letters these little girls wrote to their mother, when they

were spending the summer of 1927 in Chicago, show that both girls are very intelligent. They readily answered all questions without hesitation. We think their expressions came from their hearts, and that they had not been coached or influenced as to their testimony or statements. There was some intimation on the part of the defendants that these two little girls, on the day they appeared in court, had dressed themselves to suit the occasion, that they wore old clothing and old shoes for effect. This intimation is not borne out by the record. It appears that the little girls did not know when they left their home for school that they were going to be sent for and taken to the courthouse that day. They both state that they had no knowledge, when they went to school in the morning, that the court would send to the school for them and they testified that they wore the clothes which they usually wore to school. Assignments as shown by group No. 4 are overruled.

As to group No. 5, this group relates to certain testimony that the witnesses related in regard to a reconciliation or a meeting between the petitioner and her first husband and statements that he made relative to the change in his attitude and feeling towards petitioner. We think this evidence was competent except that part of petitioner's testimony as to any statements that her former husband made which is in violation of section 5598, Shannon's Code, which provides that:

"Proceedings By Or Against Personal Representatives, and Guardians.—In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless, called to testify thereto by the opposite party (1869-70, Ch. 19, Sec. 1; 1869-70, Ch. 78, Secs. 2, 3)."

Some of these witnesses also related that they had heard the children make statements in regard to wanting to be with their mother and a letter was introduced which Joy Newburger had written to Judge Julian C. Wilson, urging him to try to get Joy and her mother together. We think that all of this testimony was competent for the purpose of the Chancellor trying to find out the full facts of the case and it corroborates the children's statements made to the Chancellor at the time of the trial. These were statements from the children made freely, voluntarily and at times when they were not under their mother's influence. These assignments as shown by group No. 5 are overruled except assignment No. 4, which is sustained but excluding all petitioner's testimony as to conversations with her first husband, Joseph Newburger, does not result in a reversal of the Chancellor's decree. Her testimony as to meeting Joseph Newburger

is competent and she is corroborated as to this meeting and she is also corroborated as to her statements as to the result of the meeting. She should not have been permitted, however, to testify as to any conversation with Joseph Newburger.

Group 6 is assignment 51, relative to the testimony of R. L. Taylor. Complaint is made that the Chancellor did not allow the witness, R. L. Taylor, one of the executors and close and intimate friend of the deceased, Joseph Newburger, to explain fully and in detail why he did not think the two little girls should be permitted to associate with petitioner or be under her custody and control. The witness was asked and answered the following as follows:

"Q. I want to find out from you now—you have expressed an opinion of your own, I want to find out from you now whether or not in your opinion these children ought not to be permitted to spend week ends with their mother, that is day and night week ends with their mother? A. If that was left to me I would not allow them to go to see her at all.

"Q. You would cut them off completely? A. I would cut them off completely if I had my way about it and I would like to tell you why.

This witness was permitted to testify that he knew the petitioner's general moral character and it was bad. We do not think it was error in the court not granting further time to allow a witness to go into a full and detailed explanation. He had expressed his opinion as to her moral character and it was not necessary to give a detail of the statement or explanation, this assignment is overruled. The letters of Joseph Newburger to his sister and to other parties were properly excluded; the condition of his estate has changed; his friend, Judge Julian C. Wilson had resigned as executor and trustee.

We will now dispose of assignments as shown by group No. 3, which complain of the court's decree not supported by the preponderance of the evidence. Counsel insist that the petitioner entered into a solemn contract with her first husband, whereby she relinquished her care and custody of said children. The contract as set forth in the decree, as to the care and custody of the children, will not be sustained to the detriment of these children.

"In some cases the courts have gone so far as to hold contracts transferring the custody of a child to be prima-facie valid, and to cast on the parent the burden of proving that their enforcement would be against the child's welfare." 20 R. C. L., p. 605, Sec. 16.

"But in the modern cases it has been held that a husband and wife, on separating, may make a valid contract for the care and custody of their children, although such contract, while valid

between the parties, will not be sustained to the detriment of a minor child, whose interests are of the first consideration.''

Practically all of the witnesses agree that the petitioner loves her two children with a great devotion, they are happy with her. We are of the opinion, from the entire record, that it is to the best interest of the children, physically and mentally, to let them remain with their mother according to the terms of the decree entered herein.

All of the rights of the parties are safeguarded, this cause is to remain in the chancery court and the petitioner is not to remove the children beyond the jurisdiction of the court of Shelby county, except upon a proper showing or a future adjudication, if it was thought best for the children to be removed beyond the jurisdiction of the court.

All the assignments of error are overruled and disallowed except assignment No. 4. We concur and approve the decree of the Chancellor and it is affirmed.

The appellants and their surety on appeal bond will pay all the costs including the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.