# LOGAN v. LOGAN.—176 S. W. (2d) 601.

Middle Section.   November 13, 1943.

Petition for Certiorari Denied by Supreme Court, January 8, 1944.

668

Haynes & Green, of Winchester, for plaintiff in error.

Cummings & Melton, of Woodbury, and Warden & Warden, of Manchester, for defendant in error.

FELTS, J. This is a contest over the custody of Jimmy Logan, age 5, waged on the one side by his mother, Hazel Logan, and on the other by his paternal grandparents, E. A. Logan and wife, Hallie Logan.

In 1936 their son Vernon Logan and Hazel Logan married and this one child was born of their union. In November 1940 she filed the original bill in this cause for divorce and custody of the child, alleging non-support and cruel and inhuman treatment. Vernon Logan filed an answer and cross bill denying the charges, making counter charges of cruel and inhuman treatment, and seeking a divorce and custody of the child.

On January 10, 1941, the cause was heard before the Honorable R. W. Smartt, Circuit Judge, and he sustained the bill, dismissed the cross bill, granted Hazel Logan

a divorce from bed and board, ordered the husband to pay the wife for herself and the child $5 per month, and decreed to her the exclusive custody of the child. This decree, however, directed the mother, on the first Sunday of every month, after attending church or Sunday school, to take the child to the home of Mr. and Mrs. E. A. Logan, where the child was to remain until the following Saturday afternoon, when they were directed to return the child to the custody of the mother.

She filed a petition in the cause on August 2, 1941, charging Vernon Logan had failed to pay the monthly installments as ordered and asking that he be attached for contempt. He filed an answer alleging he had paid such installments and denying that he had been guilty of contempt. The record does not reveal what action was taken on this first contempt proceeding.

Vernon Logan filed a petition January 15, 1942, charging that Hazel Logan had been guilty of various acts of misconduct and was not a fit person to have custody of the child. He prayed for an absolute divorce and that the custody be decreed one-half the time to his father, E. A. Logan, and the other one-half to M. S. Smoot, father of Hazel Logan. On January 15, 1942, Judge Smartt entered a decree granting Hazel Logan an absolute divorce. On January 30, 1942, she filed another petition for contempt on the ground that Vernon Logan had failed to pay the $5 per month as ordered. She also filed an answer to his petition of January 15, denying its charges.

The Honorable T. L. Coleman, Circuit Judge, sitting by interchange for Judge Smartt, on February 9, 1942, heard the cause upon these various petitions, dismissed the petition for contempt, ordered that the former decree as to the custody remain in force, and ordered Vernon Logan to continue paying $5 per month.

On July 9, 1942, E. A. Logan and Hallie Logan filed their petition in the cause, reciting the former proceedings, alleging that in May, 1942 Hazel Logan had married one Clark and she had refused to bring the child to their home as directed by the former decree; that she was not now the person to have custody of the child; and that they were proper persons and capable of caring for the child. Their petition prayed that she be attached for contempt and that they be decreed the exclusive custody of the child.

On August 12, 1942, Hazel Logan Clark answered the petition, averring that Vernon Logan had been in contempt since January 25, 1942, for refusing to pay the $5 monthly installments; that petitioners, E. A. and Hallie Logan, had themselves been violating the terms of the original decree, which enjoined them to do nothing to alienate the child from the mother; and that they had been continually poisoning the child's mind against her. She admitted that, in view of these continual violations of the decree by them, she did refuse to deliver the child to them on one occasion, she acting without advice and under the impression that since they were disregarding the decree she could do so too. She reiterated that she was a fit and proper person to have custody of the child and prayed that their petition be dismissed.

Judge Coleman heard the cause upon the petition and answer on September 25, 1942. He held that Hazel Logan Clark had not been guilty of wilful contempt, and he dismissed the petition, but allowed the original decree as to the custody to stand unmodified.

On October 30, 1942, E. A. Logan, Hallie Logan, and Vernon Logan, filed their joint petition reciting the former proceedings, and averring that at the time the former decrees were entered all the parties lived in Man-

chester; that since her recent marriage Hazel Logan Clark and her husband had moved to Tullahoma, approximately 11 miles from Manchester, and had taken the child with them; that by her flagrant, disobedience of the decree of the court regarding the custody she had forfeited her right to such custody; and that petitioners were proper persons to have the custody; and they prayed that the court modify the former decree so as to give them the exclusive custody of the child.

Hazel Logan Clark answered this petition reciting in detail the former steps in the cause, and denying that she had violated the decrees except in the one instance above noted. She alleged that this petition was a continuation of the efforts of petitioners "to vex and trouble her into turning over the child to petitioners." She further averred:

". . . She loves her child, is devoted to its interests and lives in constant fear that petitioners will continue to harass and vex her by court proceedings which are unfounded, unjust and without foundation in fact. Respondent most respectfully prays and humbly petitions that this matter be heard in full and settled once and for all, so that she may rest in peace and live a normal undisturbed life devoted to the care and attention of her only child."

And she prayed that the former decrees be modified so as to give her the exclusive custody of her child and that she be not required to deliver him to his grandparents any more.

Judge Smartt, on February 14, 1943, entered an order directing that, pending a hearing upon the petitions, E. A. Logan and wife should have the custody of the child from 9 a. m. of the first day till 9 a. m. of the eleventh day

of each' month, beginning with the month of February, 1943; and that Hazel Logan Clark deliver the child to them at the hour named on the first day and they return the child to her at the hour fixed on the eleventh day of each month.

The cause was heard upon these petitions and the testimony of witnesses on April 22, 1943, before the Honorable Alan S. Kelly, Circuit Judge, sitting by interchange with Judge Smartt. He found that Mrs. Hazel Logan Clark was a fit and proper person to have custody of her child, and expressed the opinion that she had a paramount right to it and "no court in the United States" would deny her that right. He, however, appreciated the painful and difficult situation that had resulted from the former decrees dividing the custody, and expressed the view that he "ought not to undertake to disturb it," although he anticipated that "in another year serious difficulties are going to arise" by reason of the child's going to school or the mother's possible change of her place of residence.

And he entered a decree dismissing the petitions, committing the exclusive custody to the mother, but directing her to continue to allow Mr. and Mrs. Logan to come to her home on the first Sunday of each month, take the child, and keep him till the following Saturday afternoon, when they were directed to return the child to the mother.

Hazel Logan Clark appealed in error and has assigned errors, all of which are directed to the point that the court should have given her the exclusive custody of her child and should not have given the custody to Mr. and Mrs. Logan for one week out of each month.

There is little, if any, dispute as to the facts. Mr. and Mrs. Logan, grandparents of the child, are substantial people, of excellent character, able to provide well for

the child, and are deeply devoted to him. Likewise, the mother is of good character, a proper person to have the custody, and is devoted to the child as only a mother can be. Her mother and father are also people of good character and have a good home. For the present she is living with them while her husband, Sgt. David Clark, is on duty with our armed forces. As for the father of the child, the decree appealed from recites that: "Vernon Logan, through his counsel, abandoned any interest in the petition during the trial of the cause." As stated, Mrs. Hazel Logan Clark is living with her parents in Tullahoma, whose home is a suitable and proper place for the rearing of the child. She is employed as Interviewing Clerk at the Employment Service in Tullahoma, earning a salary of $120 per month, and her husband's pay is $131 per month.

■ ■ All our cases recognize that the welfare of the child is the paramount consideration, and that ordinarily a child's welfare will be better fostered with its parents than with other persons. The case of Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S. W. (2d) 558, holds that a parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons, even though they are much attached to the child. This is particularly true in a case like this where the parent is the mother and the child is of such tender age as to need a mother's care. All of the decrees in this case expressly find that she is a proper and suitable person to have the custody, and they commit to her the exclusive custody, but with the provision that the custody be divided so as to allow the paternal grandparents to have the child one-fourth of the time.

674

■ We do not think the former decrees constitute res adjudicata of the question before us. All of them retained the cause in court, according to Code section 8454, which provides that such a decree shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require. Ordinarily a former decree of custody is regarded as res adjudicata upon the facts then existing and in the absence of any changed conditions requiring a change of the custody. But we think conditions have changed in the present case since the first decree was entered dividing the custody. This litigation has been waged with a fierceness characteristic of such unhappy controversies. It has naturally stirred deep emotions and bitter feelings on both sides, which have continued to grow more intense. The child has now reached the age at which he cannot be isolated from these unhappy consequences. He is also approaching school age and, as the learned trial judge observed, new and serious difficulties will continue to arise from this division of the custody.

■ It is generally very unwise to divide the custody of a child between contending parties because it is hardly possible for a child to grow up and live a normal, happy life under such circumstances. Many cases have recognized this. Larson v. Larson, 176 Minn. 490, 223 N. W. 789; Campbell v. Campbell, 96 N. J. Eq. 398, 130 A. 361; Brock v. Brock, 123 Wash. 450, 212 P. 550; Towles v. Towles, 176 Ky. 225, 195 S. W. 437; McCann v. McCann, 167 Md. 167, 173 A. 7; Martin v. Martin, Tex. Civ. App., 132 S. W. (2d) 426. In the latter case it was said (132 S. W. (2d) 428):

"In our opinion, the original decree awarding the child part time to each of the parents was unwise. Cer-

tainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C. J. p. 344, sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex. Civ. App., 37 S. W. (2d) 241.''

For these reasons, we think it was error to divide or alternate custody between this mother and these grandparents of this child. Accordingly, the decree is modified so as to commit the exclusive custody to the mother and to relieve her of having to divide it with the grandparents. The case will be remanded to the Circuit Court of Coffee County to the end that the court may retain jurisdiction to make any further orders which the exigencies of the case may require. The costs of the cause are adjudged against E. A. Logan and his wife, Hallie Logan.

Howell, J., concurs.

Hickerson, J., did not participate.