ROWLES v. REYNOLDS, No. 1.—196 S. W. (2d) 76.

Eastern Section. March 16, 1946.

Petition for Certiorari denied by Supreme Court, June 29, 1946.

226

H. W. Schoolfield and W. L. Tillett, both of Chattanooga, for plaintiff in error.

Raulston Schoolfield, Jesse M. Hargraves, and Marguerite K. Lanham, all of Chattanooga, for defendant in error.

McAMIS, J. This is a contest between divorced parents over the custody of their daughter, Karen Rowles,

aged eleven years. The father, Carl Rowles, prosecutes this appeal in error from a judgment granting the exclusive custody to his former wife, Doris Rowles Reynolds.

A divorce was granted the wife, for causes not appearing in the present record, on June 22, 1939. On September 2, 1939, an agreed order was entered giving the principal custody to. the father. In October 1939, Rowles was married to his present wife and sometime thereafter moved to Alexandria, Virginia, his present place of residence. On some date not appearing between the date of the divorce decree and October 29, 1940, when she filed a petition as Doris Reynolds, Mrs. Rowles became Mrs. Reynolds. She will be hereafter referred to by that name.

On April 17, 1940, Mrs. Reynolds filed a petition seeking the exclusive custody of the child. The petition is not in the record but the decree recites that it was filed April 17, 1940. After hearing proof the court on September 28, 1940, decreed that for the time being it was for the best interest of the child that she remain in the custody of Mrs. Reynolds from September to June of each year, inclusive, with the right of the father to have the custody and control during July and August of each year. The cause was retained on the docket for further orders and decrees relative to the custody and control of the child. Mr. Rowles excepted to this decree but he seems not to have filed a petition to rehear or a motion for a new trial and, by failing to prosecute an appeal, may be said to have acquiesced in the decision of the Court to award the principal custody of the child to Mrs. Reynolds.

During each succeeding year Mr. Rowles, as provided by the decree, took Karen to his home in Alexandria,

Virginia, returning her to the mother for the beginning of the school year. This arrangement seems to have worked satisfactorily until 1945 when the present controversy arose with the unfortunate result that bitterness between the father and mother has been revived and intensified.

In May 1945, the present Mrs. Rowles wrote Mrs. Reynolds that she and her husband would expect Karen for the summer as usual enclosing a check to cover her railroad fare to Alexandria. Mrs. Reynolds promptly returned the check stating that she did not think Karen should make the trip alone and that it would be necessary for either Mrs. Rowles or Mr. Rowles to come for her. Mr. Rowles thereupon went to Oak Ridge where Mrs. Reynolds had resided for some time but upon reaching the government reservation surrounding Oak Ridge he was denied entrance. He then sent a taxi to the Reynolds home for the child but without avail. Mrs. Reynolds testified that she did not send the child with the taxi driver because, in the meantime, Karen had decided she did not wish to visit her father and step-mother during the summer and because she did not think it proper to send her alone in a taxi.

Thereafter, Mr. Rowles filed a petition to have Mrs. Reynolds held in contempt of court for refusing to deliver the child to him and on the further ground that she had taken Karen to Flordia, contrary to the provisions of the decree. Both parties also sought by petition to have a decree for the exclusive custody and control of the child.

After hearing proof, the trial judge determined that it was not in the best interest of the child that her custody be alternated between the parties and that the former decree should be modified to grant exclusive custody to Mrs. Reynolds with the right of the father to see the child

at reasonable times and places. Mr. Rowles filed a motion for a new trial by which he challenged the conclusions of the court on the facts and strenuously insisted that the trial court should have recused himself and refused to try the case by reason of having talked with Mrs. Reynolds before her petition was filed. On the latter issue affidavits, including an affidavit of the trial judge, were filed and the judge submitted himself to cross examination by attorneys for Mr. Rowles.

It seems proper to first determine the propriety of the action of the trial judge in refusing to grant a new trial on the ground that he had discussed the case with Mrs. Reynolds before the trial and because, allegedly, he had formed an opinion before the trial that the former decree permitting Mr. Rowles to take the child out of the State upon giving bond for its safe return was improper under Cureton v. Cureton, 117 Tenn. 103, 96 S. W. 608, and undertook to modify the former decree to cure this error.

As we have stated, the trial judge filed an affidavit setting forth his conversation with Mrs. Reynolds. He also submitted himself to cross-examination by counsel for Mr. Rowles. The substance of his testimony was as follows:

"X19. You had talked to the mother in the presence of the child but you do not recall whether the child talked to you or not? A. What happened was simply this, as I recall it,—I think I am correct about it, this woman came to my office with this child and asked me if the child had reached the age where she could decide for herself with whom she should live. I told her I could not talk to her about the case, if she had any matters she wanted to bring up before the court to get her a lawyer. They were there only a very short period of time. I was

anxious to get rid of them as soon as I could without being discourteous. I do not think they sat down."

At another place he testified:

"X15. From what this woman had said to you before she filed her preliminary application for modification, you concluded it was the child that did not want to go back to the father? A. I made no conclusion about it, but I naturally assumed when the mother came in and asked that question, that the child did not want to, but no one told me."

■ We think there is no substance in the insistence that the trial judge was influenced by anything that occurred before the trial. We will not assume without proof that a trial judge is so lacking in judicial poise or his mind so unstable and formative that he could have formed an opinion from what occurred in this case. We doubt that even the most partisan would be influenced by such an occurrence but certainly there can be no just ground for ascribing partiality and bias to a trial judge of high standing and long experience upon such slight evidence. Occurrences of this nature are not out of the ordinary with trial judges and, while too much emphasis cannot be placed upon strict impartiality in judicial proceedings and any discussion of the case out of court is justly condemned, we do not think the trial judge would have been warranted in recusing himself under the circumstances related.

■ As to the discussion of the Cureton case and its supposed bearing upon the disposition of this case, it appears that when counsel for Mr. Rowles applied for a contempt citation for Mrs. Reynolds, Judge Ballard merely called attention to the holding in the Cureton case for such bearing as it might have upon the rights of the parties to this case. The opinion announced at the con-

clusion of the hearing shows that the decision was based upon the evidence without regard to the Cureton case and we think there is no merit in the contention that the decision in this case was an unauthorized attempt to bring this case within the holding in the Cureton case. The assignments directed to the refusal of the trial court to grant a new trial on the ground that Mr. Rowles was deprived of a trial before an impartial and unbiased tribunal are, accordingly, overruled.

■ ■ · We pass next to the insistence that the trial court erroneously restricted the proof as to Mrs. Reynolds' fitness to have the custody and control of the child to her character and conduct subsequent to the decree of divorce or the decree of September 28, 1940, by which she was given custody for ten months of the year. We think this was proper. The question to be decided was her fitness at the time of the trial and not at a time too remote to bear upon that question. See Newburger v. Newburger, 10 Tenn. App. 555. We think all questions concerning Mrs. Reynolds' fitness before 1940 are concluded by the decree of September 28, 1940, which is necessarily based upon her fitness, in the absence of proof that, for some reason, the question of the fitness of the applicant for custody was not then fully developed; or that subsequent events have transpired which demand a new appraisal of the evidence then adduced; or the proof was unavailable or unknown to the party contesting the application and the welfare of the child demands a reconsideration of evidence on which the former decree was based in connection with evidence of new facts and circumstances. Copeland v. Copeland, 180 Tenn. 609, 177 S. W. (2d) 555; Hicks v. Hicks et al., 26 Tenn. App. 641; 176 S. W. (2d) 371; Logan v. Logan, 26 Tenn. App. 667,

176 S. W. (2d) 601; 27 C. J. S., Divorce, sec. 317, p. 1196. None of these circumstances appear in this case.

 With the evidence so limited, there is nothing to support the insinuations as to Mrs. Reynolds' moral character. The testimony of the present Mrs. Rowles as to a statement made by Karen Rowles (denied by Karen) was properly excluded as hearsay. This leaves unimpaired the former judgment as to Mrs. Reynolds' fitness and makes the contest one between two parents both of whom are morally and otherwise fitted to have the custody and control of the child. We may say that we are impressed with the testimony Mr. Rowles and could, without hesitation, award him the divided or partial custody if we should reach the conclusion that a divided or alternate custody would best serve the interest and promote the welfare of the child. But, as held in cases too numerous to cite, this is the paramount consideration in cases of this kind and it sometimes becomes the painful duty of the court, an this ground, to separate parent and child.

██ Has there been such a change in circumstances since the former decrees as to warrant the change effected by the trial judge in this case? In determining this question we are not limited to a change in the status of the father or mother but must also consider any change in the status or condition of the child. In dealing with a similar question Mr. Chief Justice Green, in State v. French, 182 Tenn. 606, 188 S. W. (2d) 603, 605, said:

"We think evidence concerning any change of circumstances reflecting on the boy's welfare was competent—whether change in his father's status or condition, his mother's status or condition, or his own status or condition."

▮ No change in the status of either the father or mother is called to our attention and if changing the custody of the child to deprive the father of her custody for two months out of the year to which he was entitled under the former decree can be justified it must be on the ground that the child has reached the age where her own wishes must be considered and her physical and mental development has reached the point that it is no longer conducive to her welfare to divide the custody between the parents.

▮ The practice of undertaking to divide the custody of a child is not favored. This question was only recently considered by the Middle Section of this Court in Logan v. Logan, supra, 26 Tenn. App. 667, 176 S. W. (2d) 601, 603, where Judge Felts expressed this view and fortified it thus:

"It is generally very unwise to divide the custody of a child between contending parties because it is hardly possible for a child to grow up and live a normal, happy life under such circumstances. Many cases have recognized this. Larson v. Larson, 176 Minn. 490, 223 N. W. 789; Campbell v. Campbell, 96 N. J. Eq. 398, 130 A. 361; Brock v. Brock, 123 Wash. 450, 212 P. 550; Towles v. Towles, 176 Ky. 225, 195 S. W. 437; McCann v. McCann, 167 Md. 167, 173 A. 7; Martin v. Martin, Tex. Civ. App., 132 S. W. (2d) 426." And see quotation from the case last cited incorporated in the opinion which well expresses the reasons underlying this view.

We can well understand why a trial court might feel justified in dividing the custody of a child too young to form or express a preference between its parents and, in the same case, after the child has reached the age of discretion, and has expressed a preference, might con-

clude that the welfare of the child demands that one of the parents have the exclusive custody.

As to the bearing of the child's wishes on that question, Mr. Chief Justice Green, in State v. French, supra, said:

"The boy has been in the custody of his mother for about a year now, will shortly be ten years of age, and by comparison of his residence and custody in the two places will be in a position to express his preferences and his reasons for the same. If he at that time wishes to return to his father's custody, such an expression will be voluntary and the juvenile court in Ohio will no doubt gravely consider his wishes."

In this case the child testified unequivocally that she desired to live with her mother and did not wish to return to her father for the summer months in the future. Her testimony indicates that this is her considered preference and whether, as insisted, this view has resulted from undue influence brought to bear by the mother, or is the result of her own thought and feeling, to force her against her will to visit her father and step-mother might not only destroy any affection she has for her father but become a disturbing factor in her future training and development which, the record indicates, would otherwise be normal and happy.

In this case, more than in the ordinary case, the plan of alternate custody is complicated by the fact that the parents reside in different states necessitating the child making a long trip both ways and we think the trial judge reached the correct conclusion in granting the exclusion custody to the mother with the right of the father to see the child at reasonable times and places. Since the father has always been punctual in returning the child to the mother in obedience to the orders of the

court, we think this privilege might be interpreted to mean that he could see the child out of the presence of the mother and, perhaps, unless the child in the exercise of her own free will objects, keep her with him for a day or two at a time within the jurisdiction of the court. But all of these matters we leave to the determination of the trial court upon the remand in the light of developments as they occur from time to time. If it developes, as counsel insist, that Mr. Rowles cannot gain entrance into the reservation where Mrs. Reynolds resides, provision will have to be made for her to bring the child to some point where the father can visit with her at reasonable times.

There is an assignment based upon the trial court's action in refusing to hold Mrs. Reynolds in contempt but we understood from the oral argument of counsel for Mr. Rowles that that question is now largely moot and that this court would not be warranted in reversing that feature of the case.

The judgment below will be affirmed and costs adjudged against the plaintiff in error and surety.

Hale and Burnett, JJ., concur.