Teena Lorraine Daniel GARNER,
Plaintiff–Appellant,

v.

Larry Dale GARNER,
Defendant–Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 10, 1989.

Rehearing Denied March 1, 1989.

Permission to Appeal Denied by
Supreme Court May 30, 1989.

Robert L. Huskey, Manchester, for plaintiff-appellant.

Rondal T. Wilson, Shelbyville, for defendant-appellee.

## OPINION

CANTRELL, Judge.

This appeal concerns the custody of a twenty-month-old child. The order of the chancellor provides that each parent will have primary custody of the child for alternate six-month periods. On appeal, both parents object to that arrangement. The mother contends that the proof shows that the best interests of the child would be served by placing him in her custody. The father makes the same argument except that he contends that the chancellor should have placed the child with him. We affirm the judgment of the lower court.

The parties were married in November of 1982 and had one child, Tyler Jordan Garner. Mrs. Garner sued Mr. Garner for divorce on March 9, 1987 on the statutory ground of cruel and inhuman treatment. Mr. Garner filed an answer and a counterclaim on August 6, 1987 in which he denied the material allegations of the complaint and sought a divorce on the ground of cruel and inhuman treatment. Each parent sought primary custody of the child.

After a hearing, the chancellor awarded Mrs. Garner a divorce but gave custody of the child to the parties jointly and ordered that each parent have physical custody for alternating six-month periods. Mrs. Garner filed a motion to alter or amend the judgment and a motion for a stay pending appeal. At the hearing on the motions, the chancellor heard proof from a counseling psychologist and the owner of the day school that the child attended.

### Joint Custody

This court has, in the past, expressed doubt that a custody order splitting or alternating custody serves the best interests of the child. *See Dodd v. Dodd,* 737 S.W.2d 286 (Tenn.Ct.App.1987); *Dunavant v. Dunavant,* 31 Tenn.App. 634, 219 S.W.2d 910 (1949); *Logan v. Logan,* 26 Tenn. App. 667, 176 S.W.2d 601 (1943); *Phillips v. Phillips* (Tenn.Ct.App.), 1987 WL 11129, filed in Nashville, May 22, 1987; *Bloom v. Bloom* (Tenn.Ct.App.), 1986 WL 3159, filed in Nashville, March 12, 1986. Such orders, however, are permitted by

Tenn.Code Ann. § 36–6–101 (Supp.1988), and, in some cases, have been approved by this court. *See Baggett v. Baggett,* 512 S.W.2d 292 (Tenn.Ct.App.1973).

■ An order of the trial court making a custody determination is a finding of fact that the best interests of the child are served by the order of the court. *See Bush v. Bush,* 684 S.W.2d 89 (Tenn.Ct.App.1984). That finding comes to this court with a presumption of correctness that will not be disturbed unless it is against the preponderance of the evidence. Tenn.R.App.P. 13(d); *Dodd v. Dodd,* 737 S.W.2d at 286; *Bah v. Bah,* 668 S.W.2d 663 (Tenn.Ct.App. 1983). Thus, the question in this case is whether the evidence preponderates against the order of the trial judge.

■ We cannot say that the preponderance of the evidence is against the trial judge's order. In fact, as in most divorce cases, the record contains very little evidence focusing on the welfare of the child. Neither party proved the other unfit for the role of custodial parent. There is evidence from which a conclusion could be drawn that Mrs. Garner bruised the child in administering a spanking just prior to the divorce hearing. That incident, however, was apparently an isolated one; and, by the time of the final decree (in April of 1988), the child had finished the first six months with Mrs. Garner without any apparent major difficulty.

As a reason for giving him primary custody, Mr. Garner cites the fact that on August 18, 1987, just twelve days after the original divorce hearing, Mrs. Garner married one of the men with whom she had denied having a relationship. This evidence was offered as a post-judgment fact, and we have considered it along with the other evidence in the record. While the evidence of Mrs. Garner's remarriage may reflect on her credibility, it does not show that she is an unfit parent, or that she should be denied primary custody of the child.

Mrs. Garner complains that, when the child is with Mr. Garner, Mr. Garner's parents will be primarily responsible for the child's care. Since Mr. Garner works long hours, sometimes holding two jobs, this fact is undoubtedly true. Mrs. Garner, however, also works and must rely on others to care for the child during the working day. It is also true that Mr. Garner's parents kept the child for the first six months of his life as a favor to the parties while they were still married.

The only evidence offered by the counseling psychologist was that it would be detrimental to the child to be deprived of some contact with either parent for an extended period of time. Based on this testimony, the chancellor modified the original order to allow the party not having custody to telephone the child at regular intervals.

The parties, and the court, must keep in mind that no child custody order is ever final and unchangeable. It will stay in effect only until changed circumstances and the best interests of the child demand a change in custody. When Tyler is old enough to attend school, a different arrangement may be more appropriate. For now, however, the trial court's order will not be disturbed.

### The Waiver Issue

At the hearing on the motion for a stay, the trial judge held that, by complying with the order and delivering the child to Mr. Garner, Mrs. Garner had waived any objection to the original order. While we are not sure that Mrs. Garner's actions amounted to a waiver, we think our disposition of the appeal on the merits renders this issue moot.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Franklin County for any further proceedings necessary. Tax the costs on appeal to the parties equally.

LEWIS, J., concurs.

KOCH, J., dissents with an opinion.

KOCH, Judge, dissenting.

I must respectfully disagree with my colleagues' decision to approve the trial court's child custody arrangement in this case. The record simply does not support a

finding that it is in the boy's best interests to be shuttled back and forth between his parents every six months.

## I.

Teena Lorraine Garner, now thirty-one, and Larry Dale Garner, now thirty-two, were married in November, 1982. It was Mr. Garner's second marriage and Mrs. Garner's third. Mrs. Garner gave birth to their son, Tyler Jordan Garner, in December, 1985. Both parties are employed at the Arnold Engineering Development Center in Tullahoma.

The parties' marriage suffered from the strains caused by Mr. Garner's addiction to alcohol, the parties' work schedules, and Mr. Garner's "workaholism." His drinking resulted in loud confrontations in the home and in verbal and physical abuse to Mrs. Garner at home and elsewhere. Mr. Garner sought professional help for his problem in the latter part of 1986 after being arrested for public drunkenness. He is now a recovering alcoholic.

Mr. Garner's drinking caused Mrs. Garner to seek other activities outside the home. On her own, she became increasingly active in church and other sporting activities. Mr. Garner continued to spend less time at home because of his outside jobs.

The parties separated in March, 1987 after a series of particularly violent confrontations. Mrs. Garner filed a complaint for divorce on March 9, 1987 in which she requested custody of the parties' son. By agreement, she was permitted to retain custody prior to the trial. Mr. Garner filed a counterclaim for divorce in August, 1987 in which he too requested custody of the parties' son.

The trial court heard the case without a jury on August 6, 1987. As noted by the majority, little of the proof was directed toward the relative fitness of either parent to be the custodian of the child. Mrs. Garner's case related to the indignities that she had suffered at Mr. Garner's hands. Mr. Garner's case consisted primarily of his unsuccessful efforts to prove that Mrs. Garner had abused and neglected the child, as well as his efforts to prove that Mrs.

Garner had sexual relations with three men subsequent to their separation.

Based on this proof, or perhaps more appropriately this lack of proof, the trial court awarded the parties joint custody of their son and gave them physical custody at alternating six-month intervals. Both parties have appealed and insist that they should be awarded exclusive custody.

## II.

The details of child custody and visitation arrangements are within the discretion of the trial court. *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn.Ct.App.1973). However, this discretion is not without limits. It must be based upon appropriate legal principles and upon evidence that the resulting disposition is in the child's best interests. I can find neither in this record.

### A.

Child custody and visitation disputes require the courts to focus on the welfare and the best interests of the child. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn.1986); *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983). A child's welfare includes not only its physical, but also its mental or emotional well-being. *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949); *Bevins v. Bevins*, 53 Tenn.App. 403, 410, 383 S.W.2d 780, 783 (1964).

Children need stability and the assurance that their needs will be provided for in relatively stable surroundings. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn.Ct.App. 1983); 4 J. McCahey, M. Kaufman & C. Kraut, *Child Custody & Visitation Law and Practice* § 25.04[2] (1988). Thus, this Court has recognized that changes in custody can traumatize a child. *Hall v. Honeycutt*, 489 S.W.2d 37, 41 (Tenn.Ct.App.1972).

This Court has repeatedly criticized "revolving door" custody arrangements, such as as the one involved in this case, for the simple reason that they are disruptive to the child. Over forty-five years ago, Judge Felts cautioned:

It is generally very unwise to divide the custody of a child between contend-

ing parties because it is hardly possible for a child to grow up and live a normal, happy life under such circumstances.

*Logan v. Logan,* 26 Tenn.App. 667, 674, 176 S.W.2d 601, 603 (1943). We have echoed this rule ever since. *Dunavant v. Dunavant,* 31 Tenn.App. 634, 649, 219 S.W.2d 910, 916 (1949); *Rowles v. Reynolds,* 29 Tenn.App. 224, 233, 196 S.W.2d 76, 80 (1946); *Phillips v. Phillips,* App. No. 87–17–II, slip op. at 5 (Tenn.Ct.App. May 22, 1987); *Bloom v. Bloom,* App. No. 85–198–II slip op. at 3 (Tenn.Ct.App. Mar. 12, 1986).

While we have stopped short of rejecting this type of custody arrangement outright, divided or split custody should only be ordered when there is specific, direct proof that the child's interests will be served best by dividing custody between its parents.[1] There is no such proof in this case.

### B.

Custody and visitation decisions turn on the facts of each case and on the careful balancing of the numerous considerations applicable to custody decisions. *Holloway v. Bradley,* 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (1950); *Scarbrough v. Scarbrough,* 752 S.W.2d 94, 96 (Tenn.Ct.App. 1988). They depend many times on the credibility of the various witnesses and upon the weight given to their testimony. This task is best left to the trial court. *Weaver v. Nelms,* 750 S.W.2d 158, 160 (Tenn.Ct.App.1987); *First Nat'l Bank of Shelbyville v. Mutual Benefit Life Ins. Co.,* 732 S.W.2d 278, 280 (Tenn.Ct.App. 1987).

A trial court has the responsibility to devise a custody arrangement that is in the child's best interests based on the proof presented by the parties. Normally, this is accomplished by comparing both parties' fitness as a parent at the time of the hearing and then by awarding custody to the parent who will serve the child's interests best.[2]

I do not see how the evidence introduced at trial preponderates in favor of finding that Tyler Garner's interests will be served best by shuttling him back and forth between two antagonistic parents every six months. Such an arrangement will surely not provide him with the security, continuity, and stability he deserves at his young age. On the contrary, it will only expose him to the unsettling prospect of being uprooted from familiar surroundings every six months.

Both parents have argued against a joint custody arrangement and have requested this Court to award them exclusive custody. Joint custody works best, if it works at all,[3] when both parties agree to it. *See Dodd v. Dodd,* 737 S.W.2d 286, 289–90 (Tenn.Ct.App.1987). In light of the parties' conduct and the history of their dealings with each other, an award of joint custody does not appear to be warranted without a finding that the parties are capable of effectively agreeing to the significant decisions involving their son.

This Court has the authority pursuant to Tenn.R.App.P. 13(d) and 36(a) to review the record de novo and to grant the parties the relief to which they are entitled. However, the record contains insufficient evidence of the parties' current circumstances to en-

---

1. *Baggett v. Baggett,* 512 S.W.2d 292 (Tenn.Ct. App.1973), is cited occasionally for the proposition that this Court has approved split or divided custody arrangements. However, the custody arrangement in *Baggett* is far different from the one involved in this case. The *Baggett* court "divided" custody by awarding the mother physical custody during the school year and by awarding the father physical custody during all but one week of the summer vacation. This "divided" arrangement stemmed from the Court's aversion to awarding the wife "principal" custody because her conduct had brought about the divorce.

2. Unfortunately, trial courts are required all too often to determine which custody arrangement will be the least detrimental to the child. *See* J. Goldstein, A. Freund & A. Solnit, *Beyond the Best Interests of the Child,* 53–64 (2d ed. 1979).

3. There is a growing concern that joint custody arrangements harm rather than help children. *See* Kolata, *Child Splitting,* 22 Psychology Today, Nov. 1988, at 34; Ansberry, *Kids Are Often Losers in Joint Custody,* Wall St. J., Sept. 22, 1988, at 37, col. 3; Scott & Derdeyn, *Rethinking Joint Custody,* 45 Ohio St.L.J. 455 (1984).

able us to make an informed custody decision. Therefore, I would vacate the trial court's custody order and remand the case for a hearing solely on the issue of the custody and support of the child. Pending this hearing, I would permit the child to remain in the custody of the parent with whom he is currently residing.