TAMPA BAY BANK

v.

Marie Richard LOVEDAY.

Court of Appeals of Tennessee,
Eastern Section.

Oct. 25, 1974.

Certiorari Denied by Supreme Court
June 9, 1975.

Harry Berke, of Berke, Berke & Berke,
Chattanooga, for appellant.

Melvin B. Butler, Nashville, for appellee.

## OPINION

SANDERS, Judge.

Defendant has appealed from a jury verdict holding her liable as maker on a note.

In January, 1972, the Defendant, Marie Richard Loveday, as president of Carpet Discountland, Inc., negotiated a loan with the Plaintiff, Tampa Bay Bank, for the sum of $5,600.00. Since Carpet Discountland, Inc., was a new corporation, the bank was unwilling to make the loan to the corporation without the Defendant's personally endorsing the note.

The note was drawn and the Defendant executed it on behalf of the corporation as its president and also signed the note personally where the term "personal endorsement" is typed over her signature. The note was also signed by R. E. Loveday immediately under the signature of the Defendant.

At the time the note was executed the Defendant also executed a security agreement on behalf of the corporation for "any and all merchandise located at 3625 S. Dale Mabry, Tampa." This security is reflected on the face of the note executed by the Defendant.

When the original note fell due the Plaintiff mailed a renewal note to the Defendant and R. E. Loveday. The renewal note was returned to the bank purportedly executed by the Defendant as president of the corporation and endorsed on the back by her, but the signature of R. E. Loveday was not on the note.

Default was made in the payments of the renewal note and the Plaintiff filed suit in the Circuit Court of Hamilton County against the Defendant for the amount of the note plus interest and attorney's fees.

The Defendant filed an answer saying she had not executed the renewal note.

Plaintiff then amended its complaint to include suit on the original note.

The Defendant admitted the execution of the original note but defended the suit on

the theory that she was an endorser of the note and that Plaintiff had negligently impaired the collateral and she was therefore not liable.

The case was tried before a jury with The Honorable David Walker presiding. The jury found the issues in favor of the Plaintiff.

Defendant's motion for a new trial was overruled and she has appealed to this court and assigned error.

The thrust of the Defendant's assignments of error is that the Court erred in refusing to instruct the jury that the Defendant was an "endorser" of the note and it was error for the Court to charge the jury that if they found the Defendant to be a "maker" of the note it would not be necessary for them to consider whether or not the bank had impaired the collateral.

The case is before us on a narrative bill of exceptions and leaves much to be desired from the standpoint of portraying the actual proof adduced in the trial.

The two issues in the case are whether the Defendant was a maker or endorser of the note and, if an endorser rather than a maker, whether the Plaintiff had negligently impaired the collateral to the extent that the Defendant should be released from liability.

These are the issues which the Trial Court submitted to the jury for their consideration.

The Defendant filed an affidavit by the foreman of the jury to the effect that the jury found the Defendant to be a maker of the note and therefore found liability without considering the question of impairment of collateral.

We do not think the record supports the conclusion that the Defendant was a maker of the note. Based upon the record and the law applicable thereto, we think the Defendant is clearly an endorser.

If there were proof in the record upon which the jury could have found an impairment of collateral, we would feel compelled

to reverse and remand. However, the record fails to support this theory of the Defendant.

■ It is a well-settled rule in this state that no verdict or judgment shall be set aside or a new trial granted by the appellate court unless, in the opinion of the appellate court, after an examination of the entire record, it shall affirmatively appear that the error complained of affected the results of the trial. T.C.A. § 27–117; *State ex rel. Sprague v. Bucher,* 38 Tenn.App. 40, 270 S.W.2d 565.

The weakness of the narrative bill of exceptions insofar as Defendant's insistence is concerned lies more in what it fails to show than what it shows the proof to be.

The record shows that the Defendant, as president of the corporation, negotiated the loan with the Plaintiff and executed the note on behalf of the corporation and personally endorsed it. Defendant executed a security agreement on behalf of the corporation on all of its inventory located at 3625 S. Dale Mabry, Tampa. The record fails to show what inventory, if any, the corporation ever had at this location or what value it had. The record fails to show who the other officers, directors, stockholders or employees of the corporation were.

In April, 1972, the Defendant told an officer of the Plaintiff Bank that she had filed suit for a divorce in Chattanooga, Tennessee, against her husband "and that she would expect the bank to obtain their money on the note by collecting the same from the corporation when the note became due on May 18, 1972." The officer of the bank advised that they would make every effort to collect the note from the corporation and if necessary would foreclose on the security agreement.

The note was not paid on the day it became due and a renewal note was mailed to the Defendant and her husband, R. E. Loveday. The note was returned to the bank with the name of the Defendant on it but was not signed by R. E. Loveday. The

record fails to show who returned the renewal note to the bank.

The proof shows that the place of business of the corporation was vacated and the carpet inventory moved in June, 1973. At that time the Plaintiff was unable to locate either the Defendant or her husband, R. E. Loveday, since the Defendant had moved to Chattanooga, Tennessee, without notifying the Plaintiff she was leaving Tampa.

Again, the record fails to show who was responsible for closing the business or what happened to the inventory.

The proof also fails to show that the Defendant ever ceased to be the chief executive officer of the corporation or that she ever disassociated herself from the business.

As pertinent here, T.C.A. § 47–3–606 provides:

> "*Impairment of Recourse or of Collateral.*—(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . .
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

This leads to the issue of what constitutes unjustifiable impairment of collateral and what standard is used to evaluate the creditor's conduct in accordance with the standard. *White and Summers, Uniform Commercial Code,* § 13–14 pp. 434, 435, says:

> "If the creditor handles the collateral carelessly so that its value is diminished or acts in a way which makes the collateral unavailable to the surety (for example, fails to perfect his security interest), then the surety may claim discharge under 3–606(1)(b). Comment 5 to 3–606 explains that the creditor's conduct in respect to the collateral is measured by the standard of 9–207 (that is, reasonable care) . . ."

It should be noted at this point that the reference to 9–207 should be read in light of subsection (1) of the same section, which states that this standard of care applies to collateral in the custody and possession of the creditor.

The Supreme Court of Tennessee has recently taken the opportunity to expound upon the creditor's responsibility to the collateral in the case of *Commerce Union Bank v. May,* 503 S.W.2d 112 (1973). This case involves security in the form of a mortgage on improved real property and the issue before the court was whether or not the bank discharged the surety by not renewing a lapsed insurance policy on the premises to protect the collateral. In arriving at its decision the Court cites certain passages from the Restatement of the Law of Security found in the Chancellor's memorandum opinion:

> Section 132: "Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
>
> . . .
>
> (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

> Comment (c) to Section 132: "The nature of the security may impose upon the creditor duties to preserve its value so long as the creditor is the only person who can conveniently take the appropriate action."

The Court decided to follow the Chancellor's opinion, thereby making § 132 of the Restatement of the Law of Security the rule in Tennessee.

In the *Commerce Union Bank* case, *supra,* at page 118, the Court held that the bank did not impair the collateral since both parties were in an equal position to take the necessary steps to protect the collateral.

In the case at bar the Defendant was not only in an equal position, but we find she was in a more superior position to protect the collateral than was the Plaintiff.

The Trial Court, in the order overruling the motion for a new trial, said: ". . .

At the close of all the proof, the Court was of the opinion that the defendant was, in fact, the maker of the note and was further of the opinion that there was not sufficient evidence to establish any impairment of collateral and was inclined to direct a verdict on that issue. . . . There was no evidence that the collateral was anything other than stock and trade for the carpet business which was purchased on consignment, and no evidence of the value of the equity, if any, in the stock and trade."

Under the proof in this record, had the jury found the Defendant to be an endorser instead of a maker, she would have been liable as a matter of law since she has failed to show that the Plaintiff impaired the collateral.

The assignments of error are overruled.

The judgment of the Trial Court is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.