STATE *ex rel.* PARKER *v.* PARKER.

(*Nashville,* December Term, 1950.)

Opinion filed January 13, 1951.

Frank Davenport, of McMinnville, for appellant.

McAllen Foutch, of Smithville, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a habeas corpus proceedings whereby Mrs. Bessie Tramel Parker seeks to regain the custody and "entire control" of her son, James Reed Parker, Jr., who was approximately six years of age at the time of the filing of the petition on October 18, 1949. The defendant to the petition is A. O. Parker, who is the paternal grandfather of the child. He and Mrs. Parker, the child's paternal grandmother, have had the actual custody and control of this child since he was seventeen months old. The child's father died in July of 1948. This paternal grandfather objects to the custody of this child being restored to the mother because he thinks this might be detrimental to the child.

After the submission of considerable evidence the Circuit Judge awarded the custody of the child to his grandparents, Mr. and Mrs. A. O. Parker, but provided that he should be with his mother at specified times hereinafter mentioned. Both relator and respondent have appealed from such parts of this decree as are adverse to their wishes.

The parents were separated either shortly before or after the birth of this, their only child. The mother and this baby then lived with her parents, Mr. and Mrs. J. A. Tramel, at or near McMinnville. While the mother was sick the father came to the home of Mr. and Mrs. Tramel and took the child to the home of respondent, Parker, at

Smithville. He has continuously since lived with and been under the care and control of his grandparents, Mr. and Mrs. Parker.

It is established without dispute that Mr. and Mrs. Parker have taken splendid care of their grandson in all respects. They own and live in a nice home located in a nice community and close to good schools and churches. The child regularly attends both, and is completely happy. There is that exchange of affection between them usually expected and seen between grandparent and grandchildren in a good home. These grandparents seem to be anxious and able, both physically and financially, to properly look after this child until he is old enough to make up his own mind as to whether he desires to make his home with them or with his mother.

Mrs. Parker, the mother of this child, lives with her parents, Mr. and Mrs. J. A. Tramel, at McMinnville. This record clearly establishes without contradiction that they are just as good people as are the Parkers. They too live in a comfortable home located in a good community and close to schools and churches. Theirs is also a Christian home, and there is no doubt but that those grandparents would bestow upon this child the results of every affection which grandparents entertain for their grandchildren, and are physically and financially able to do so. The child's mother expresses an intention to continue living with her parents, and they are entirely agreeable to this arrangement.

No one can reasonably disagree with the proposition that in truth, justice and equity a mother has a natural, thus paramount, right to the care, companionship, custody and control of her infant child, the father being dead, when all other factors are equal. Nor are

these factors made unequal by the mere showing that a grandparent, for instance, is financially better able to care for the child than its mother. Courts should not deprive the mother of this natural right in the absence of a fair showing that custody by the mother may be detrimental to her child. But when this is made to appear the right of the mother must yield to that which appears reasonably necessary for the welfare of her child. *Stubblefield* v. *State ex rel. Fjelstad,* 171 Tenn. 580, 106 S. W. (2d) 558.

This record discloses without contradiction that this mother has a splendid reputation in the community in which she lives, and has never had a contrary reputation. She seems to be liked by her neighbors. She goes to church. There is no suggestion of any misconduct upon her part, or of any bad habit.

She was examined orally in open Court. That examination discloses her to be a person of intelligence. It may be gathered from the record that she has a high school education. She is not in ill health, physically. During a great portion of at least the last year before she filed this petition she was employed at a hosiery mill and at a knitting mill and earned between $25.00 and $30.00 per week. Her supervisors testify that her services were entirely satisfactory, and that only a lack of work caused the termination of her employment at each of these places. She has on some occasions clerked in stores in McMinnville.

Commencing at a time shortly prior to the birth of the child involved here, and from time to time thereafter until the latter part of July, 1948, this relator, Mrs. Parker, has been subject to attacks of very severe nervousness and periods of intense depression. The severity of this nervousness and feeling of depression was such

as to require stays and treatments at hospitals whose medical staff are specialists in treatment of an illness of that character. She was last hospitalized for a period of eighteen months ending in July of 1948. While Mrs. Parker has not suffered from that illness since then, insofar as this record discloses, the four medical experts who treated her in one or the other of the two hospitals agree that there is a strong probability of a return of this illness.

The greater weight of the opinion of these experts is that because of the situation mentioned, it is not wise nor best, and probably adverse to the welfare of both Mrs. Parker and her child, that she have her child's custody "without supervision". This is a very important factor in determining who shall have the present custody and control of this child.

Added to the factor just mentioned is the fact that this child has been living with his paternal grandparents since he was seventeen months old. Should he now be taken away from that home for other than visits there will have to be a mental readjustment upon his part, since he has so long lived with his grandparents. While this alone would by no means be sufficient to deprive this mother of the exercise of her natural right to the companionship and custody of her son, it becomes more important in the light of the probability that there will be a recurrence of Mrs. Parker's illness, thereby requiring further adjustments by this child during his tender years.

The Circuit Judge did not say why he was awarding the custody of this child to the paternal grandparents rather than to the child's mother. No doubt the factors above mentioned are the reasons for the conclusion reached. This Court is not able to say that this

conclusion is erroneous. On the other hand, this Court is reluctantly forced to the same conclusion by the evidence.

In addition, it is a commonly known fact that the Trial Judge in the course of the trial being heard upon oral evidence discerns conditions which cannot be portrayed in a transcript, but which properly influence his decision. Properly, the law gives him great latitude in those cases, and does not require him to follow technical rules of evidence. It is correctly said that "no greater burden rests upon the mind and heart of a trial judge than when he is pronouncing a judgment involving the future welfare of a little child, and he should not be reversed except upon the clearest and most convincing evidence". Wisely, the law is such that the child's welfare is subject to review as often as the facts justify. It may be, and often is, that a decision rendered today may and should be changed in a short time. *Davenport* v. *Davenport*, 178 Tenn. 517, 160 S. W. (2d) 406.

In connection with that which has just been stated, it is appropriate to call attention to the fact that judgment of the Circuit Court ordered this cause retained for such future decrees as the circumstances might make advisable. It will not be many years until this child shall have obtained such discretion as will enable him to be of assistance to the Court in determining whether the present arrangement should continue. His mother at that time will apparently still be sufficiently young to enjoy the companionship and love of this child for many years to come.

The judgment of the Circuit Court as first entered provided that the mother, Mrs. Parker, might see and visit her child "at reasonable times and under reasonable circumstances". Subsequently this judgment was modi-

fied so as to provide that the child should visit his mother in the home of her parents "and elsewhere" from Friday afternoon to Sunday afternoon on the first and third weeks of each month, and that the mother, Mrs. Parker, should "have the custody of said child and have him visit with her one whole week of each month of the three vacation summer months". Mr. Parker, the paternal grandfather, assigns as error all these provisions with reference to the visits.

The provisions of this judgment with reference to these visits are in this Court's opinion not erroneous insofar as they apply to visits of the mother by the child in the home of the maternal grandparents, Mr. and Mrs. J. A. Tramel, of McMinnville, since these grandparents will undoubtedly look after the welfare of the child and help his mother in supervision during these visits. They have expressed a willingness and a desire to have the child in their home.

But the decree provides for these visits with the mother not only in the home of Mr. and Mrs. Tramel but likewise if the mother should be "elsewhere". Of course, Mr. and Mrs. Tramel would not be in a position to look after the welfare of the child or help in his supervision if the child is visiting the mother at places other than in the home of Mr. and Mrs. Tramel. It seems proper, therefore, to modify the judgment so as to limit the place of these visits to the home of Mr. and Mrs. Tramel. The judgment is to this extent modified.

Although Mr. Parker complains of the action of the Court in taxing him with one-half of the cost, that is a matter within the discretion of the trial judge and such action is not an abuse of that discretion. On the other hand, it appears quite proper under the circumstances of this case.

 The judgment of the Circuit Court will be modified to the extent above directed and as so modified is affirmed and remanded for such further proceedings as may hereafter be proper. The costs of this appeal will be divided equally between relator, Mrs. Bessie Tramel Parker, and the sureties on her bond, and the respondent, A. O. Parker, and the sureties on his bond.

All concur.