## STATE ex rel. SPRAGUE v. BUCHER.—270 S. W. (2d) 565.

Western Section.   October 28, 1953.

Petition for Certiorari denied by Supreme Court, March 3, 1954.

Heathcock & Elam, of Union City, for relator.

Miles & Miles, of Union City, for defendant.

CARNEY, J. This case is before this Court upon the petition of the relator, Mrs. Mary Bucher Sprague, for a Writ of Error to the Circuit Court of Obion County, Tennessee. The suit was originally instituted as a habeas corpus proceeding against relator's former husband, Bernard J. Bucher, for the custody of their son, Jerry Lee Bucher, who was nearly nine years old when the petition was filed on June 20, 1952. The child was born on September 28, 1943. The defendant, Bernard J. Bucher, and Mrs. Mary Sprague were married in Cape Girardeau, Missouri, in December 1941, and lived together in the State of Illinois until January 15, 1946, when they separated. They had only one child, Jerry Lee Bucher, born to this marriage, and he was about two and one-half years old at the time of the separation.

On April 29, 1946, the relator was granted a divorce from the defendant in the Circuit Court of Champaign County, Illinois, in which case the defendant was served with personal service and was represented by counsel. The grounds of the divorce were "extreme and repeated cruelty", and she was awarded the care and custody of the child, Jerry Lee Bucher, with the right of the defendant to see the child on alternate week ends and to have the

child visit the defendant one week during each summer. The decree of divorce expressly provided as follows: "It is further ordered, adjudged, and decreed that neither of said parties shall remove said child from the State of Illinois without the permission of the Court." On June 3, 1946, the relator married her present husband, Donald A. Sprague, a professional soldier, stationed at Chanute Field in or near Rantoul, Illinois, and to this marriage has been born a son, and thus a half-brother to the minor child, Jerry Lee Bucher.

Sometime in the early part of 1947 the defendant, Bernard J. Bucher, married his present wife, Mrs. Inez Bucher, and soon thereafter moved to Obion County, Tennessee, where he has since lived, and he and Mrs. Bucher now own and operate two restaurants in Union City, Tennessee.

The relator continued to live in the State of Illinois with her present husband, Sgt. Sprague, until June 1949 when her husband, Sgt. Sprague, was sent to Germany for a short while. The relator suggested to the defendant Bucher that she desired to take Jerry Lee Bucher to Germany, to which the defendant seriously objected, and on June 10, 1949, the defendant had the child in Union City with the permission of the Circuit Court of Champaign County, Illinois, for a week's visit, as set out in the original decree, and he refused to surrender custody of Jerry Lee Bucher unless the relator signed an agreement not to move the child from the State of Illinois without permission of the Circuit Court of Champaign County, Illinois, and she further agreed not to remove the child from the United States either with the consent or without the consent of said Court. The agreement was signed, the child was turned over to its mother, the rela-

tor, and they returned to Illinois where they continued to live until December 24, 1951. Sgt. Sprague went to Germany for a short tour of duty, but the relator did not accompany him. In December 1951 Sgt. Sprague had been assigned for a tour of duty in Panama. The relator's mother was living in San Antonio, Texas, where she operated a motel. Since relator could not go to Panama with her husband without leaving the child, Jerry Lee Bucher, she decided to go to San Antonio, Texas, to live with her mother until Sgt. Sprague's tour of duty in Panama was over.

Relator filed a petition in the Court of original jurisdiction in Champaign County, Illinois, to take said child to San Antonio; the defendant filed an answer; and upon the hearing an order was entered granting petitioner (relator) the right to take the child to San Antonio upon giving a $500 bond conditioned to return the said minor child to the jurisdiction of said Court upon demand of the Court. On December 22, 1951, petitioner executed a bond for $500 with two sureties thereon, one of whom qualified himself as having $6,000 worth of personal property free and unencumbered, and the other $1,000 worth of personal property free and unencumbered, with no real estate listed by either of the sureties. The bond was filed with the Clerk of the Court, and so far as this record shows was never submitted to the Trial Judge for approval. However, relator's answer, in substance, was that she did not understand that she was obligated to show the bond to the Judge, but thought that she only had to file the same with the Clerk. On December 24, 1951, she left Illinois and went to San Antonio, Texas, where she lived with her mother until May 1952 when she returned to Illinois to see a sick relative of her husband,

and the defendant went to Illinois and got the child for a week's visit, as provided in the original decree. Upon the termination of the week's visit by the son with his father, the father refused to return the child to the relator, saying that the child did not want to go back to Texas with his mother.

Relator brought the present suit for habeas corpus against the defendant. The defendant answers alleging, in substance, that the child wanted to stay with his father; that the surroundings in San Antonio, Texas, were not too wholesome; that the father was financially able to give the child so much more in the way of education, recreation, amusement, etc., than the mother and, in particular, that he would send the child to college if the child were left in his possession, and other changes in circumstances since the granting of the divorce in Illinois in 1946. The Trial Judge, after hearing extensive proof, determined that both the father and the mother were of good character and, in substance, equally fit to have the care and custody of said minor child, Jerry Lee Bucher, but that the father could offer the greater advantage to the child during the school months and, accordingly, adjudged that the defendant, the father, should have the custody of Jerry Lee Bucher, for the school months each year, and that the mother, Relator, should have the child during the summer months. Accordingly, a decree to this effect was entered on June 25, 1952, with the provision that the relator, Mrs. Mary Bucher Sprague, execute a solvent bond in the amount of $750 to be approved by the Judge, conditioned that she would not remove the child from the United States, and would return the child to his father by September 1, 1952, or by the time for the Fall term of school. Each party prayed an appeal from the decree, but the appeals were never perfected.

The relator did file and have approved her Bill of Exceptions and has now filed the record for Writ of Error and made a number of Assignments of Error. Substantially, these Assignments of Error make the following questions for this Court:

(1) Authority of the Circuit Court of Obion County to modify the terms and provisions of the divorce decree and award of custody by the Circuit Court of Champaign County, Illinois.

(2) The adjudication by the Trial Court that the Relator was a legal resident of the State of Texas instead of Illinois as claimed by her.

(3) The action of the Trial Court in passing upon the solvency of the bond which Relator executed in the Circuit Court of Champaign County, Illinois, before taking the child to Texas.

(4) Sufficiency of the evidence to support the judgment of the Trial Court in awarding custody of the minor child.

(5) The authority of the Trial Court to divide the custody of the minor child between the father and the mother.

■ The defendant insists that since the relator instituted the proceedings for habeas corpus that she is estopped to question the jurisdiction of the Circuit Court of Obion County to adjudicate concerning the care and custody of the minor child, Jerry Lee Bucher. To this we cannot agree because the relator, in the absence of a new adjudication by a Court of competent jurisdiction, was entitled to the custody of the minor child under the authority of the Circuit Court of Champaign County, Illinois, which admittedly did have jurisdiction of all the parties and the subject matter, and which decree awarded

her the custody of the child and was binding until subsequently changed. When the defendant refused to surrender possession of the child, relator was faced with the alternative of proceeding by law through the writ of habeas corpus or proceeding unlawfully by kidnapping or force of arms. Thus it would be inequitable to apply the doctrine of estoppel against her for choosing the only legal and peaceful remedy available to her.

■ The relator contends that her present husband, Sgt. Sprague, is a citizen and resident of the State of Illinois, though now stationed for Army duty outside the continental United States in Panama, and that she as his wife is a citizen and resident of the State of Illinois, though she is temporarily living in Texas awaiting her husband's return from Panama. The Trial Judge found that the relator was not a citizen and resident of the State of Illinois, but had become a citizen and resident of the State of Texas. With this finding we respectfully disagree because we find nothing in the record to indicate a permanent change of address. We think the explanation given by relator for moving to Texas: to live with her mother for reasons of economy and also to be on a more convenient Army air route from the United States to Panama for visits by her soldier husband, is reasonable and logical and there is nothing in the record to indicate that Sgt. Sprague who owns real estate in the State of Illinois, has ever attempted to set up a legal residence at any place other than the State of Illinois. A man may have two or more residences, but only one domicile or legal residence. Denny v. Sumner County, 134 Tenn. 468, 184 S. W. 14, L. R. A. 1917A, 285; Middle Tenn. Electric Membership Corp. v. State ex rel. Adams, 193 Tenn. 513, 246 S. W. (2d) 958.

A soldier may abandon his domicile and select another domicile, but clear and unequivocal proof of such intention to change the domicile is required. Tyborowski v. Tyborowski, 28 Tenn. App. 583, 192 S. W. (2d) 231. Ordinarily, domicile of wife is that of her husband, but she may acquire a separate domicile for purposes of divorce. Holman v. Holman, 35 Tenn. App. 273, 244 S. W. (2d) 618. No such evidence appearing to us from the record, we find that the relator, Mrs. Mary Bucher Sprague, was legally a resident of the State of Illinois at the time of the filing of this writ, though she was temporarily residing in Texas. Under the authority of White v. Bickford, 146 Tenn. 608, 611, 244 S. W. 49, 26 A. L. R. 129, the father having been legally deprived the custody of Jerry Lee Bucher by the Circuit Court of Champaign County, Illinois, the father's domicile no longer controlled the domicile of the child, but the domicile of the child is established at the domicile of the person having the care and custody which in this case was the relator. Therefore, we find that at the time of the filing of the petition for writ of habeas corpus in the Circuit Court of Obion County in June 1952, both the relator and her minor son were residents of the State of Illinois and up to that time the said Jerry Lee Bucher had not acquired any domicile in the State of Tennessee by virtue of the week's visit with his father, the defendant. Therefore, Assignment of Error No. 4 is sustained.

Next, we are confronted with the question of whether or not the Circuit Judge of Obion County could hear evidence concerning change of circumstances regarding the relator, the defendant, and the minor child, and could hear evidence as to the best interest for the welfare of the child, and whether the judgment of the Circuit Court of

Champaign County, Illinois, awarding custody to relator was binding and res adjudicata between the parties. The early case of Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E, 587, announced the rule that the decree in the foreign Court awarding custody of the children to be res adjudicata subject to modification only by the Court that granted the decree. In subsequent cases decided on writs of habeas corpus our Supreme Court seems to have departed from the rule as laid down in Kenner v. Kenner, supra. In State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S. W. (2d) 685, 686, which was a suit on behalf of the relator father, the Court said:

"When such proceedings (habeas corpus) involve the custody of children, they are not decided according to the strict legal right of the petitioner, but are dependent upon the child's welfare."

■ In State ex rel. French v. French, 182 Tenn. 606, 188 S. W. (2d) 603, Chief Justice Green referred to Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 779, and upheld the judgment of the lower Court awarding the custody of the minor child to the mother who claimed under a judgment of divorce and award of custody from a Court in Cleveland, Ohio. However, in the same case the Court held that evidence was admissible to show any change of circumstance reflecting on the boy's welfare, whether change in his father's status or condition, his mother's status or condition, or his own status or condition. In Cecil v. State ex rel. Cecil, 192 Tenn. 74, 237 S. W. (2d) 558, 560, the mother and father had been divorced in the State of Georgia and the mother given care and custody of the minor child. Six months later the father filed petition in the Court of Georgia granting the divorce seeking a change in custody, and the mother, after having

a plea to the petition overruled, fled the jurisdiction of the Court taking the minor child with her. In her absence the Judge of the Georgia Court modified the former decree so as to award the care and custody of the minor child to the father. The father, having learned that the mother and child were in Davidson County, Tennessee, filed a petition for writ of habeas corpus. The Trial Court found that there had been no change in circumstance of the parties since the entry of the decree in the Georgia Court awarding the custody of the minor child to the relator father, and ordered the child delivered to the relator with authority to the father to return the child to Georgia and to be subject to the orders of the Georgia Court of original jurisdiction, and in this case Mr. Justice Gailor announced what we understood to be the present rule concerning such cases:

"(2) As we understand the limit of this rule, it is to the effect that where the custody of a child has been established by the decree of a foreign Court, the Courts of Tennessee will interfere to upset the effect of that foreign decree only when it is manifest that there has been such a change in the circumstances, condition and situation of the parties as makes it necessary on account of the welfare of the child, that the Tennessee Courts should interfere."

■ Therefore, we hold that the Circuit Court of Obion County did have authority to hear evidence as to whether or not there had been such a change in the circumstances, status and conditions of the parties as made it necessary on account of the welfare of the child that the Tennessee Court should intervene.

■ The Trial Judge heard evidence which tended to show that the boy had not been getting along too well in

school in Texas, that the tourist court operated by relator's mother was in close proximity to one or more bars, that the relator had a child by her second husband, and that, on the other hand, the defendant father and his present wife were childless, that both the father and stepmother seemed to be devoted to the minor child, Jerry Lee Bucher, that arrangements had been made to take the child to a local Catholic Church, both the relator and the defendant being Catholics, that the minor child seemed to be most happy in his new surroundings, and wanted to live with his father and stepmother, and that the defendant father and stepmother were able to give the child educational and social advantages that might not be afforded by the relator on the salary of her husband, who was a Tech. Sergeant in the United States Air Force. From all of which the Trial Judge determined that the Illinois Court could not effectively adjudicate and enforce a decree controlling the custody of the minor child, Jerry Lee Bucher, and that the Court felt constrained to determine the custody of the minor child, and entered a decree awarding the defendant father custody of the minor child during the nine months school term and awarding the relator mother custody of the minor child during the vacation months. An order was entered authorizing the mother to remove the child from the State of Tennessee conditioned that she execute solvent bond approved by the Court in the amount of $750, payable to the State of Tennessee for the benefit of defendant, Bernard J. Bucher. In Cecil v. State ex rel. Cecil, 192 Tenn. 74, 237 S. W. (2d) 558, 559, Mr. Justice Gailor also announced what we understand to be the present rule concerning the actions of Trial Judges in child custody cases: "In cases involving child custody, the decision of the Trial Judge who saw and heard the witnesses, is

to be given great, if not controlling effect, and we will interfere only where we find a palpable abuse of discretion, or a judgment against the great weight of the evidence. Davenport v. Davenport, 178 Tenn. 517, 160 S. W. (2d) 406; State ex rel. Parker v. Parker, 191 Tenn. 564, 235 S. W. (2d) 580.''

The relator insists that under the authority of Dunavant v. Dunavant, 31 Tenn. App. 634, 219 S. W. (2d) 910, it is unwise to divide the custody of a minor child between contending parents. This rule was reannounced in Rowles v. Reynolds, 29 Tenn. App. 224, 196 S. W. (2d) 76, 80, citing Logan v. Logan, 26 Tenn. App. 667, 176 S. W. (2d) 601, 603. To the same general effect are Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S. W. (2d) 558. However, in State ex rel. Parker v. Parker, 191 Tenn. 564, 235 S. W. (2d) 580, a decree was expressly approved which gave a minor child's custody to his grandparents with permission for the child to visit his mother every other week and to spend one week of each summer month with his mother. Therefore, none of the reported cases go so far as to hold that a Trial Court may not, under any circumstances, in his discretion, provide for divided custody of a minor child.

In this case, the Trial Judge both saw and heard all the parties to his cause and their witnesses, and determined that it was to the child's best interest that he spend nine months of the year with his father while going to school, and that he spend the three vacation months with his mother, whether she be in Texas or elsewhere in the United States where her husband might be stationed by the Army. We do not find any abuse of discretion, nor do we find that the evidence preponderates against the judgment of the Trial Judge. Assignments of Error 1, 2, 5, 6, and 7 are overruled.

In the Finding of Facts the trial Judge did state that it appeared that the appearance bond which relator left with the Clerk of the Circuit Court in Illinois was obviously of no force or value and had not been approved by the Court of Champaign County, Illinois. We think the Assignment of Error No. 3 should be sustained because there is no proof in the record that the relator intended to defraud or evade the orders of the Court. The Illinois decree did not expressly require the bond to be approved by the Court, and we think that relator's statement that she did not know that it had to be approved by the Court should be taken at face value on the evidence in this record. The mere fact that an appearance bond shows on its face that the sureties possessed only personal property instead of real estate does not in and of itself make it insolvent. We think that so long as the Illinois Court raised no question concerning the solvency of the bond, and there is no evidence in the present case of any attempt on the part of the relator to evade appearance in Court, that the solvency or insolvency of the appearance bond to the Circuit Court of Obion County became immaterial to a proper disposition of the present case.

While we have sustained two Assignments of Error as to the Findings of Fact by the Trial Court, we do not think these two Findings of Fact by the Trial Judge were determinative of his decision in the case and, therefore, we do not hold them to be reversible error. Code of Tennessee, Sections 10653, 10654. A decree will be entered in this Court affirming the judgment of the lower Court and taxing the costs of this appeal upon the Relator and her sureties.

Swepston, P. J., and Avery, J., concur.