**Mr. and Mrs. Arlis PACK,**
**Plaintiffs-Appellees,**

v.

**Mrs. Dorothy Garrison ROGERS et vir.,**
**Delmas F. Rogers,**
**Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 27, 1976.

Certiorari Denied by Supreme Court
June 26, 1976.

Scott Daniel and D. C. Daniel, Jr., Murfreesboro, for plaintiffs-appellees.

Bernard K. Smith, Smith & Stanley, McMinnville, for defendants-appellants.

## OPINION

TODD, Judge.

This appeal involves the custody of Tammy Arlene Garrison, aged 7, who was born the natural child of Dorothy and Charles Garrison. The father is deceased, and the mother is now Mrs. Delmas F. Rogers.

The action was initiated by Mrs. Arlis Pack, maternal aunt, and Mr. Pack, her husband, by a Petition for Temporary Custody filed in Juvenile Court. The Juvenile Judge awarded temporary custody to Mr. and Mrs. Pack. The decision was appealed to the Circuit Court by the mother, Mrs. Rogers; and her husband was permitted to join in and participate in the cause in Circuit Court. The Circuit Court found the child to be dependent and neglected (relating to its natural mother) and, acting under § 37–230 T.C.A., granted temporary custody to Mr. and Mrs. Pack under specified conditions including visitation rights to the natural mother, and remanded to the Juvenile Court for further proceedings.

From the action of the Circuit Judge, Mr. and Mrs. Rogers have appealed and assigned nine errors.

The first assignment complains that the Trial Judge erroneously found the child to

be abandoned under § 37–202(7) T.C.A., as follows:

"(7) 'Abandoned child' means a child whose parents or other persons lawfully charged with his care and custody willfully fail to visit or willfully fail to support or make payments toward his support for a period of four (4) consecutive months."

Appellants assert that the child was not abandoned by its mother.

It is uncontroverted that, about six months before the birth of Tammy, her mother and father separated and the mother moved into the home of the Packs with her two children, aged 12 and 15; that they continued to live with defendants until about eight or nine months after Tammy's birth, when the mother and children moved to another address; that shortly thereafter Tammy was returned to the Packs and has lived with them ever since; that the father, Garrison, lost his life in an accident in July, 1971; that the mother of Tammy went to Michigan in 1968 when Tammy was 10 or 11 months old, then returned to McMinnville for about a year, then went back to Michigan in May, 1969 and has lived there ever since; and that on August 14, 1973 the mother married Delmas F. Rogers and established a home for her husband, herself and two older children, now aged 19 and 22.

As to the critical facts of visits and support as mentioned in the statute, supra, the testimony is sharply controverted. Apparently with a background of knowledge of the statute, Mrs. Rogers testified insistently that she visited Tammy every three or four months and contributed regularly to her support by sending her clothing and gifts.

In sharp contrast, and with apparent knowledge of the same statute, the plaintiff, Velma (Mrs. Arlis) Pack, testified that the mother visited Tammy every five or six months, but that the visits were ultimately spaced at about once per year. The same witness stated that no money was ever received from the mother and that gifts were limited to some but not all Christmases and birthdays. Particularly worthy of note is a letter from the mother to Tammy regarding

clothing being sent to her. At the end of the letter is this note to Mrs. Pack:

"P.S. Velma you can wash these clothes I just don't have time I have been working every day."

Mrs. Pack testified that the mother stated to her that the clothes were obtained at a rummage sale.

Without elaborating upon the details of the testimony, it is sufficient to state that there was testimony which, if believed, would show statutory abandonment by failing to visit or failing to support within a four month period; and there is testimony which, if believed, would prove the contrary.

In cases tried orally before a judge or chancellor without a jury, it has been held that the appellate courts will give great weight to the finding of the judge or chancellor as to credibility. *National Service Fire Ins. Co. v. Williams*, 61 Tenn.App. 362, 454 S.W.2d 362 (1969) and authorities cited therein. It has also been held that, in such cases the decision at the trial level as to credibility of witnesses is final and not subject to review in the appellate courts. *Weeks v. Summerlin*, 62 Tenn.App. 650, 466 S.W.2d 894 (1970) and authorities cited therein.

■ The record presents no basis upon which this Court, from the reading of printed testimony, should substitute its judgment as to credibility for that of the Trial Judge who saw and heard the witnesses in person. The Trial Judge evidently accepted the version of the facts presented by the plaintiffs-appellees. Such version supports his conclusion that there had been an abandonment under the statute, supra.

Appellants rely upon *Ex Parte Wolfenden*, 49 Tenn.App. 1, 349 S.W.2d 713 (1959); however, said case involved an adoption and this Court specifically stated:

"[2] We should like to point out that in resolving the issue of abandonment, the circuit judge is not limited by the definition of an abandoned child found in Section 36–102(5):

'For the purpose of this chapter, an abandoned child shall be any child under the age of eighteen (18) years who shall be willfully abandoned at least four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be abandoned child.'

This definition applies according to its express provisions only in case there is an 'action or proceeding to declare the child to be abandoned child,' and has not been extended by amendment or construction to apply when the issue of abandonment is under consideration in an adoption proceeding in the circuit or chancery court." 49 Tenn.App., p. 4, 349 S.W.2d, p. 714.

■ The statutory definition of "abandoned child," § 37–202(7) supra, is applicable to cases such as the present where the Juvenile Court assumes jurisdiction of a child under § 37–203 which confers jurisdiction in:

"(2) All cases to terminate parental rights when a child is found to have been abandoned for four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child, except that this does not deprive circuit and chancery courts of the right to adjudicate an abandonment where abandonment has been alleged in a petition to adopt as is provided in chapter 1 of title 36."

■ Thus it is seen that abandonment for the purposes of adoption (as in *Wolfenden*) is not necessarily the same as statutory abandonment for four months for the purposes of custody jurisdiction of the Juvenile Court (as in the present case).

The first assignment of error is respectfully overruled.

■ The second assignment of error is that the Trial Court erred in finding that the child was dependent and neglected with respect to its natural mother. T.C.A. § 37–202 defines a dependent and neglected child as follows:

"(6) 'Dependent and neglected child' means a child

(i) who is without proper guardianship;

(ii) whose parent, guardian, or person with whom the child lives, by reason of cruelty, mental incapacity, immorality, or depravity is unfit to properly care for such child;

(iii) who is under unlawful or improper care, supervision, custody or restraint by any person, corporation, agency, association, institution, society or other organization or who is unlawfully kept out of school;

(iv) whose parent, guardian or custodian neglects or refuses to provide necessary medical, surgical, institutional or hospital care for such child;

(v) who because of lack of proper supervision, is found in any place the existence of which is in violation of law;

(vi) who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals, or health of himself or others; or

(vii) who is suffering from or has sustained a wound, injury, disability, or physical or mental condition caused by brutality, abuse, or neglect."

There is no evidence that the child in any respect qualifies under the foregoing definition, hence she is not "a dependent and neglected child." Therefore the disposition of the cause was not justified under TCA § 37–230 (dependent and neglected children) but rather under § 37–203(2), supra (cases where child has been abandoned).

The second assignment of error is sustained.

The third and fifth assignments of error are as follows:

### Third Assignment

"The lower court erred in awarding temporary custody to the Packs without making an express finding that awarding custody to the natural mother might be detrimental to the child. (T.R. 18; 25; 31–33)

### Fifth Assignment

"The lower court erred in placing the burden of proof to the natural mother to

prove her fitness rather than requiring the Packs to prove that granting the mother custody would be detrimental to the child. (T.R. 22)"

Appellants cite *State ex rel. Parker v. Parker,* 191 Tenn. 564, 235 S.W.2d 580 (1951). Said opinion does, indeed, contain the favorable statements relied upon by appellants; but a reading of the entire opinion produces an entirely different impression. *Parker* is strikingly similar to the present case. It involved a contest between a mother and paternal grandparents of a child, aged six. The judgment of the Circuit Court Judge, placing custody in the grandparents with visitation rights to the mother, was affirmed except that the visitation was restricted more narrowly on appeal. Certain factual details distinguish *Parker* from the present case, particularly the behavior of the mothers.

Appellants cite *Stubblefield v. State ex rel. Fjelstad,* 171 Tenn. 580, 106 S.W.2d 558 (1937), wherein the Supreme Court affirmed a habeas corpus judgment awarding a four year old child to its father in preference to two elderly gentlemen who were great-grandfather and great uncle of the child and with whom the child had resided since the death of its mother. The petition was filed by the father 12 days after the death of the mother, hence only 12 days of exclusive custody of the grandfather and uncle preceded the action. The Supreme Court did emphasize the paramount position of a parent in respect to the custody of a child. However, the overriding consideration of the welfare of the child was also recognized.

Appellants also cite *Dunavant v. Dunavant,* 31 Tenn.App. 634, 219 S.W.2d 910 (1949) wherein this Court reviewed a divorce decree and modified same to remove a split custody between father and maternal grandmother. This Court recognized the prior claim of a parent, but reiterated the paramount consideration of welfare of the child.

■ Appellants assert that there is no showing that awarding custody to the mother would be detrimental to the child.

The evidence as to the character and behavior of the mother (which was evidently believed by the Trial Judge) is rather unfavorable. The forfeiture of a cash bond upon charge of maintaining a house of ill fame, residing with men in an unmarried state, and leaving an infant child with a relative continuously during the first seven years of its life do not recommend the mother as a fit custodian for a little girl.

As stated in a number of authorities, suitability of custodians is a comparative matter. If, as found by the Trial Court, the child has been in suitable custody for seven years and is thriving in its present situation, the court is justified in considering the probable detriment to the child by the trauma of being transported to a distant city among strangers (except for her mother who is to a large degree a stranger). The court is also justified in considering the past conduct of the mother as reflecting upon her probable future conduct.

It cannot be said that the Trial Court acted without evidence that awarding custody to the mother would be detrimental to the child.

The third and fifth assignments of error are respectfully overruled.

■ The fourth assignment of error is as follows:

"The lower court erred in making a finding of abandonment without giving Mrs. Rogers the benefit of every controverted fact. (T.R. 18; 25 B.E. Entire Record.)"

Again, appellants cite *Wolfenden,* supra, which has already been distinguished.

Appellants also cite *Pierce v. Bechtold,* 60 Tenn.App. 478, 448 S.W.2d 425 (1969) which was also an adoption proceeding and did not involve a juvenile custody proceeding under the statute. The facts in the cited case would have supported statutory abandonment, but the statute was not involved. In *Pierce v. Bechtold,* this Court recognized the factor of *ability* of a parent to support or contribute to support. Also involved in that case was refusal of offers of support

from the mother. In the present case, it is shown that the mother was regularly employed during the entire period of her absence in Michigan and there are grounds for a finding that she did not support or contribute to support at times when she was able to do so.

Appellants fail to distinguish between an action or proceeding to declare an abandonment for the *purpose of adoption* as in *Wolfenden* and *Bechtold,* supra, and an action to assert jurisdiction of the Juvenile Court under the statute, as in the present case. The criteria of "abandonment" are decidedly different.

Appellants assert: "Mrs. Rogers did not abandon Tammy." As previously established, under the testimony believed by the Trial Judge, Mrs. Rogers was guilty of such inattention to Tammy as to constitute abandonment as defined in the statute and to confer upon the Juvenile Court the supervision of the custody of Tammy.

The fourth assignment of error is respectfully overruled.

■ The sixth assignment of error is as follows:

"The lower court erred in completely ignoring the threats and violence of the Packs to which several witnesses testified, including the testimony of Mildred Adams concerning the assault and battery *perpetuated* upon her by Mrs. Pack and one of Mrs. Pack's daughters upon learning that Tammy's mother had taken her home to Michigan, including hitting Mrs. Adams with a fishing rod handle and with a broomstick."

The conduct recited in this assignment was generally denied by plaintiffs and was, at most, a circumstance reflecting upon credibility of witnesses which was peculiarly for determination of the Trial Judge.

The sixth assignment of error is respectfully overruled.

■ The seventh assignment of error is as follows:

"The lower court erred in placing an adverse interpretation on the natural

mother's return of the minor to Tennessee upon learning of the legal action filed by the Packs in the Juvenile Court of Warren County, Tennessee. (T.R. 3; 23 B.E. 65; 273–277)"

The opinion of the Trial Court recites: "The court is further impressed with the fact that the natural mother permitted the return of the child to Mr. and Mrs. Pack from the State of Michigan after she had successfully retrieved the child from the State of Tennessee. A mother's natural instinct would be to retain custody of her daughter once she had it, no matter what action she believed Mr. and Mrs. Pack were beginning back in the State of Tennessee. Mrs. Rogers said she returned the child because she heard a kidnapping charge had been placed against her, but there is no proof that such action was in fact commenced, nor did the mother consult with an attorney in the State of Michigan, or anywhere else, regarding the legal implications of such charges."

It appears that, a few days prior to the institution of this proceeding, the mother came to Tennessee and surreptitiously removed the child to Michigan. She was thereafter informed that she was charged with kidnapping (no such charge was ever made) whereupon she sent Tammy back to plaintiffs in the custody of her older brother. This Court does not view the incident as being particularly persuasive either in favor of or against the mother. Therefore, the observation of the Trial Judge, quoted supra, is deemed non-prejudicial as to the results reached. At least, such consideration does not enter into the conclusions of this Court on appeal.

■ The eighth assignment complains of the following observation in the memorandum opinion of the Trial Judge.

"Little interest was shown by the natural mother in the child's schooling. No proof was adduced as to what conditions this court may expect Tammy to live in while at Warren, Michigan; no indication was

presented showing that Mr. and Mrs. Rogers have undertaken to find out what educational surroundings Tammy could anticipate there."

It is true that appellants presented evidence as to the nature of home accommodations for Tammy in Michigan, which included sharing a bedroom with a 19 year old sister. Mr. Rogers testified as to his good intentions as to treatment of Tammy. Other witnesses testified as to the suitability of the home.

The quoted comment of the Trial Judge was not entirely justified, however, it is viewed as a reflection upon the *interest* of the mother in the welfare of Tammy rather than the actual physical accommodations available for her. The comment is not considered grounds for reversal.

The ninth assignment is as follows:

"The lower court erred in its finding that no real effort was made to retrieve the child once the home was established in Michigan. (T.R. 22)"

There is testimony of Mrs. Rogers, denied by plaintiffs, that she made some overtures concerning assuming custody of Tammy. Evidently the Trial Judge believed the denials of plaintiffs rather than the assertions of Mrs. Rogers.

From an examination and consideration of all of the assignments of error, it does not appear that the Trial Judge committed reversible error in his disposition of the cause. The conditions of temporary custody in the Packs were defined as follows:

"1. That Mr. and Mrs. Arlis Pack maintain a comfortable home for their charge and to this end the Warren County Department of Public Welfare is directed to call upon and investigate Tammy's home and surrounding at least twice monthly and make a monthly report to the court enforcing these orders.

"2. That Mr. and Mrs. Pack remained married to each other.

"3. That Mr. and Mrs. Pack immediately shall afford this child an opportunity to regularly attend Sunday School or Church.

"4. That the Department of Public Welfare periodically investigate and report the child's grades to the court.

"5. That Mr. and Mrs. Delmas Rogers be permitted to visit and be with Tammy twice a month on weekends at some place other than the Pack's home, but within the confines of Warren County, Tennessee. That the exact time and place are to be agreed upon by the parties involved; that prior to the impending visitations Mr. and Mrs. Rogers shall notify Mr. and Mrs. Pack of the time they anticipate arrival and when they desire to have custody of the child. Under no circumstances is the child to be removed from Warren County, Tennessee.

"6. That a bond in the penal sum of Two Thousand ($2000) Dollars be executed by Mr. and Mrs. Delmas Rogers, together with two (2) solvent sureties, subject to judgment and collection in the event said child is removed from Warren County, Tennessee; said bond to be prepared by counsel for the prevailing parties and approved upon execution by the Sheriff of Warren County.

"7. That the child be given quarters separate and apart from Mr. and Mrs. Arlis Pack."

While a different conclusion might have been reached upon the same evidence, this Court is not in position to review the findings on credibility and, on this basis, the evidence does not preponderate against the conclusions of the Trial Judge which must therefore be affirmed. § 27–303, T.C.A.

It is most regrettable, but true, that love sometimes begets hatred, and despicable conduct is sometimes spawned in the purest of motives and emotions. This controversy has divided a family of sisters, engendered unseemly conduct, encouraged carelessness with the truth and produced a most distressing problem for the courts. Its source is the professed love of mother, step-father, aunt and uncle for a little girl. True love is not selfish, but seeks the welfare of the

object of love, even to the detriment of the lover.

Under the situation decreed by the Trial Judge, each of the combatants will have opportunity to prove their love for Tammy in self denial and promotion of her welfare, especially her emotional well being and growth.

The present custody of Tammy is temporary. It may be changed at any time her welfare requires.

█ Although not assigned as error or argued in briefs, this Court has noticed the words "abandoned for four (4) consecutive months *immediately preceding institution of an action* . . ." in § 37–203, quoted supra. It might be argued that the actions of the mother in seizing the child a few days prior to this action and returning the child before trial were sufficient to interrupt the abandonment "immediately preceding . . . the action"; that is, that the child was not abandoned during the entire four months preceding the action because, for a few days, she was actually with her mother in Michigan. If this argument had been made, and if the Juvenile Court should be held to have no jurisdiction for this reason, the disposition of this appeal would not be affected. This is true for two reasons.

1. No objection was made in the Trial Court as to the form or jurisdiction of the proceeding.

2. The cause was ultimately heard de novo in the Circuit Court which has jurisdiction of habeas corpus which would be the proper proceeding in event Juvenile Court has no jurisdiction. Therefore, the cause was heard on its merits by a court having jurisdiction of the subject matter, regardless of the technical designation of the case or its origin. No beneficial purpose could be served by forcing the retrial of the same issues before the same judge under a different technical category.

The judgment of the Trial Court is affirmed. The costs of this appeal are adjudged against the appellants. The cause is remanded to the Trial Court for implementation of its judgment; i. e., collection of costs and remand to the Juvenile Court.

Affirmed and Remanded.

SHRIVER, P. J., and DROWOTA, J., concur.