IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 3, 2003

## TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. L.F.

**Appeal from the Juvenile Court for Sevier County**
**No. 94-M3-496     Dwight E. Stokes, Judge**

**FILED APRIL 30, 2003**

**No. E2002-02209-COA-R3-JV**

The trial court terminated the parental rights of L.F. ("Mother") with respect to her minor child, D.F. (DOB: January 28, 1994) ("the child"). Mother appeals, essentially arguing that the evidence preponderates against the trial court's dual findings, by clear and convincing evidence, (1) that statutory grounds for termination exist and (2) that termination is in the best interest of the child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Monica J. Franklin, Knoxville, Tennessee, for the appellant, L.F.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I.

In April, 1994, D.F., then two-and-a-half months old, and his three older siblings were removed from the custody of Mother and B.F. ("Father"), following the filing of a petition for temporary custody by the Tennessee Department of Children's Services ("DCS"). The petition contained numerous allegations of abuse and neglect. The four children remained in foster care for approximately one and a half years, after which they were returned to Mother's care.

On October 1, 1999, DCS again filed a petition for temporary custody, this time only with respect to D.F., who was then age five. The petition recites that

the child has severe asthma and the mother has failed to attend necessary medical appointments and has failed and/or refused to administer necessary medication. His asthma is exacerbated by the poor hygiene and alleged smoking in the home.

An order was entered on October 4, 1999, again placing the child's temporary care and custody with DCS. The child has remained in foster care since then.

On January 14, 2002, DCS filed a petition to terminate the parental rights of Mother and Father. After a plenary hearing, the trial court terminated the parental rights of Mother.[1] In a judgment, entered August 7, 2002, the court below found, by clear and convincing evidence, that grounds for terminating Mother's parental rights existed and that termination was in the best interest of the child.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations – a presumption that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

It is settled that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). However, this right is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statutory scheme. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence that "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The issues raised in the pleadings, the evidence presented at trial, and the trial court's findings, implicate the following statutory provisions:

---

[1]The record does not reflect the ultimate decision of the trial court with respect to Father's parental rights. Suffice it to say that his rights are not at issue on this appeal.

*Tenn. Code Ann. § 37-1-147 (2001)*

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

* * *

*Tenn. Code Ann. § 36-1-113 (2001)*

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in [Tenn. Code Ann.] § 36-1-102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

\* \* \*

*Tenn. Code Ann. § 36-1-102 (Supp. 2002)*

As used in this part, unless the context otherwise requires:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

\* \* \*

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

\* \* \*

*Tenn. Code Ann. § 37-2-403 (Supp. 2002)*

(a)(1) Within thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care....

\* \* \*

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency....

\* \* \*

(C) Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, ....

IV.

Mother raises four issues for our consideration: (1) whether the evidence supports the trial court's finding of abandonment; (2) whether the evidence supports the trial court's finding that Mother failed to substantially comply with the permanency plan; (3) whether the evidence supports the trial court's finding of grounds for termination based upon Tenn. Code Ann. § 36-1-113(g)(3)(A)(i)-(iii); and (4) whether the evidence supports the trial court's finding that termination of Mother's parental rights is in the best interest of the child. As previously noted, the real issue before us is whether the evidence preponderates against the trial court's various factual findings underpinning its ultimate decision to terminate Mother's parental rights. *See* Tenn. R. App. P. 13(d).

A.

With respect to Mother's abandonment of the child, the trial court found as follows:

[Tenn. Code Ann. §] 36-1-102(1)(A) defines abandonment for the purpose of terminating parental rights. It includes the willful failure to visit for four consecutive months and the failure to support for four consecutive months. [Mother] has not provided any support for [the

-5-

child] and there appears to be no likelihood that she will do so in the near future. She went for a period of ten months without visiting [the child] and did not even recognize him when he came to visit the first time. She has stated that she did not have transportation from Clinton to Sevier County but was able to get transportation to go other places. She voluntarily moved to Clinton to new housing. In [*CASA Juvenile Servs. Ass'n, Inc. v. Musick*, C/A No. 03A01-9708-JV-00368, 1998 WL 136561 (Tenn. Ct. App. E.S., March 27, 1998),] the Court affirmed the termination of the mother. She had not visited for a period of one year. Her excuse was that she could not obtain transportation or did not schedule visits. The Court found that for a substantial period of this time, her boyfriend, as well as his niece provided her with transportation. There was public transportation available and transportation was available through the auspices of the Depart[ment]. The Court found that she did not avail herself of any of these services to visit her children. That case is very similar to this. [Mother] testified that she had transportation to other things through her boyfriend, neighbors and public transportation. [DCS] had arranged transportation for her in the past. Even when she was in Sevier County after she moved to Clinton, she never visited [DCS] or the Guardian ad Litem to request or demand visitation. She did ask the Court to order [DCS] to bring [the child] to Clinton to visit her even though this would entail removing him from school. She did not begin to visit [the child] again until the termination of parental rights trial was set.

The statutory definition of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support," as defined in Tenn. Code Ann. § 36-1-102(1)(D), was held to be unconstitutional by the Tennessee Supreme Court in *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). The court in *Swanson* stated that, pending legislative action to cure the statute's constitutional infirmity, actions in juvenile court seeking to terminate parental rights for abandonment based upon a failure to support would be controlled by the statutory definition of abandonment in effect prior to the enactment of the adoption code, adopted effective January 1, 1996. Under the prior provision, an abandoned child was defined as one "whose parents or other persons lawfully charged with his [or her] care and custody . . . willfully fail to support or make payments toward his [or her] support for a period of four (4) consecutive months." Tenn. Code Ann. § 37-202(7) (Supp. 1970) (repealed effective January 1, 1996). *See Pack v. Rogers*, 538 S.W.2d 607, 609, 610 (Tenn. Ct. App. 1976).

Mother apparently paid no child support during the entire time her child was in the custody of DCS, which, at the time of trial, amounted to over two and a half years. While Mother testified that she had taken small gifts to the child at Christmas, 2000, and for the child's birthday in 2002, she never provided any monetary support for the child. Mother argues that she was not under a court

order to pay child support. In response to such an assertion in a previous case, this Court has stated that "the support of one's children should not be conditioned upon whether one has been placed under a court order to do so." **State Dep't of Human Servs. v. Manier**, C/A No. 01A01-9703-JV-00116, 1997 WL 675209, at *5 (Tenn. Ct. App. W.S., filed October 31, 1997).

With respect to the allegation of willful failure to visit the child for four consecutive months, Mother, by her own admission, did not visit the child from April, 2001, to February, 2002. Mother claims that she attempted to contact DCS on several occasions, but the line was either busy or no one would return her phone calls. In response to this testimony, the child's DCS caseworker testified that Mother contacted him in August, 2001, to ask if the child could be transported from Sevier County, where he was living, to Clinton, where Mother resided. The caseworker informed Mother that visitation would have to take place in Sevier County. Mother then told the caseworker that she would not be able to get transportation to Sevier County. Mother did not schedule a visit with the child. The caseworker testified that he did not hear from Mother again until January, 2002, after the petition for termination of her parental rights had been filed. Mother admitted at trial that there were numerous individuals who were willing to provide her with transportation to other places.

We hold that the evidence does not preponderate against the trial court's finding that there was clear and convincing evidence of Mother's abandonment of the child.

B.

The trial court found that Mother had not substantially complied with her responsibilities under the permanency plans, noting that "[t]he only thing that she appears to have completed on either plan is obtaining housing." The initial plan of care, dated November, 1999, required Mother to do the following: (1) attend all of the child's future doctor appointments and demonstrate that she could properly administer the child's medication; (2) attend parenting classes; (3) secure and maintain clean and reliable housing with uninterrupted utilities; (4) secure reliable transportation; and (5) attend therapy to address parenting issues. A revised permanency plan was filed with the court in February, 2001, which required Mother to: (1) continue attending the child's doctor appointments and demonstrate that she can properly administer the child's medication during visitation; (2) continue supervised visitation; (3) maintain clean and stable housing; and (4) obtain a driver's license and reliable transportation.

The evidence is clear and convincing that Mother failed to substantially comply with her obligations as set forth in the plans of care. Mother testified that she did not attend all of the child's doctor appointments because she was sometimes unable to obtain transportation. While Mother apparently did complete her parenting classes, she did not complete the recommended therapy to address parenting issues. Mother was unable to obtain her driver's license, despite two attempts to do so; however, she testified that she had obtained reliable transportation through her boyfriend and other neighbors and friends. Significantly, Mother did not utilize this transportation to visit the child from April, 2001, through January, 2002, nor did she utilize this transportation to attend all of the child's doctor appointments. Mother did not exercise any visitation from April, 2001, to February,

2002. The trial court found that Mother had obtained reliable housing, but that she had failed to complete any of the other requirements of the permanency plans.

The evidence does not preponderate against the trial court's findings with respect to the allegations that Mother failed to substantially comply with the permanency plans.

C.

In addressing the issue of failure to remedy the conditions preventing the return of the child, the court found as follows:

> [The child] has been in the custody of [DCS] for over two years. There is little doubt that [Mother] loves [the child] but there is no doubt that she lacks the ability to parent [the child]. [Mother] has demonstrated no improvement. She testifies that she has housing now. In [***Bryant v. Bryant***, C/A No. M1999-01280-COA-R3-CV, 2000 WL 1483217 (Tenn. Ct. App. M.S., filed October 10, 2000)], the court confirmed [sic] the termination of a parent. On page 5, the Court quoted [***In re M.W.A., Jr.***], 980 S.W.2d 620, 623 (Tenn. Ct. App. 1998) as follows: Although the parents have improved their living conditions with a clean, well-furnished home, they have not demonstrated that their parenting skills have improved or will likely improve in the near future even with additional support. This is exactly the case here. [Mother] has had parenting skills training for thirteen months through therapeutic visitation but has shown no improvement in her parenting skills. She probably will never improve because she states and believes that she did not need to improve her skills and did not need any additional medical training for [the child].

There is ample evidence to support the trial court's determination that these conditions are unlikely to be remedied in the near future, and that the continuation of Mother's legal relationship with the child will greatly diminish the child's chances of an early integration into a stable home environment.

D.

Finally, we conclude that the evidence contained in the record supports the trial court's finding that the termination of Mother's parental rights is in the best interest of the child. The trial court succinctly summarized the factors pertaining to this issue:

> In [Tenn. Code Ann.] § 36-1-113(1) the statute designates factors that the court shall consider in determining whether termination of

parental rights is in the best interest of the child. The Court is not limited to only looking at those factors. [The child] has been in limbo for a long time and deserves a permanent placement. He has been in care for over two years this time and has been in care before. He has shown remarkable improvements since being in foster care homes and has expressed a desire to be adopted. The Court must look at [the child's] time line and not at the convenience or time lines of [Mother]. [Mother] has not even shown enough improvement to allow [the child] to have unsupervised visitation with her at this time. There is no testimony that she will ever improve. [The child] deserves a permanent home with parents who will provide for his medical and physical needs. It is clear that the parental rights of [Mother] should be terminated. Both the grounds for termination and the best interests tests have been met.

The evidence does not preponderate against these findings.

V.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, L.F.

_____
CHARLES D. SUSANO, JR., JUDGE